## ROACH AND ROACH V. JAMES S. KARR.

1. NOTICE; *Principal, and Agent.* Notice to an agent, to be notice to the
   principal, must be of some matter connected with the business in which
   the agent is engaged for the principal.

2. ———— Where A. personally made an agreement with B. and his wife
   to purchase of the wife, for a valuable consideration, and in good faith,
   a note and mortgage not yet due, and under the agreement the note and
   mortgage were not delivered and paid for until a month afterward, and
   before maturity, and when delivered were duly indorsed, and at the
   time of such delivery the said B. was the agent of A. to collect and se-
   cure certain securities, and B. delivered the said note and mortgage to
   A., *held*, that the knowledge of B. as to the usurious character of the
   note and mortgage, was not constructive or other notice to A. thereof.

3. MORTGAGE-DEED; *Execution of, by Illiterate Person; Rights, and Du-
   ties; Gross Negligence; Estoppel.* Where a wife signed a mortgage-deed
   on a homestead, to secure a note executed by her and her husband, to
   take up a prior usurious note of a like amount secured on the same
   homestead, and the wife alleged in her answer that the mortgage was
   given without her consent, and the proof showed that the wife was illit-

erate and could only read a little by spelling the words, that the mortgage was not read to her, that she inquired of her husband as to its contents at the time of making her mark to the mortgage, and was told by him "that it was none of her business, that it did not amount to a row of pins — that it was a note;" and that she signed the instrument believing it was a note; *held*, that if the wife was mistaken or deceived as to the contents of the said written instrument it was the result of her own gross negligence; that she should have demanded the paper to be read to her, and that if she relied upon the representations of her husband, it was at her peril alone; and that after the delivery of the mortgage to the mortgagee, who was innocent of any irregularity in the signing of the instrument, and who had no notice of the statements of the husband to the wife, and the surrender of the prior note to the husband, and the cancellation of the prior lien on the homestead, the wife could not assert, as against such innocent mortgagee, the defense that she never consented to the execution of the mortgage.

### Error from Neosho District Court.

FORECLOSURE of mortgage, brought by *Karr* against *Roach* and wife. Trial, and judgment in favor of *Karr*, at December Term 1875, and the defendants bring the case here. The subjoined opinion contains a sufficient statement of the facts, pleadings and proceedings.

*L. Stillwell*, for plaintiffs in error.

*Cory & Kimball*, for defendant in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action commenced by Karr, to recover a judgment on a note of $1,288, executed by the plaintiffs in error, and to foreclose a mortgage alleged to have been given by the same parties to secure the note. Separate answers were filed. J. N. Roach plead usury. Elizabeth Roach alleged in her answer, that the premises were at the date of the mortgage, and for more than ten years had been, the homestead of herself and husband, and occupied as such with their family; that the mortgage mentioned was given without her consent, and that she never consented to the execution of the mortgage; that the pretended certificate of acknowledgment attached to the mortgage was wholly false

and fraudulent, and was procured to be made by the connivance of the said James S. Karr, his agents and attorneys, with the intent to defraud and injure her the said Elizabeth Roach.

As regards the defense interposed by J. N. Roach, the facts are, that on February 28th 1872, the plaintiffs in error executed their note to Mrs. S. C. Karr, a sister-in-law of James S. Karr, and wife of one J. C. Karr, for $840, due in one year from date, with twelve per cent. interest from date. This note was confessedly usurious. The plaintiffs in error claimed they received on the note only $700. The Karrs alleged they got $735. James S. Karr resides in Canada, but came to Kansas in May 1872, to negotiate some loans. He bought from $4,000 to $5,000 of securities, and among them this note of $840. He agreed with Mrs. S. C. Karr, and Mr. J. C. Karr to take the securities at their face-value, payment and delivery being by the terms of the contract expressly postponed until they should want the money in an enterprise which they were about to commence. Sometime in June or July 1872, and long before the maturity of the $840 note, it, with other securities, was sent to the defendant in error, and he paid for them in accordance with his contract. When the note of $840 was delivered it was duly indorsed by both J. C. Karr and wife. When this note fell due it was surrendered to plaintiffs in error, and they executed in lieu thereof to James S. Karr their note of $1,150, bearing date February 28th 1873, due in one year with twelve per cent. interest from date. The interest due on the note of $840, and an additional $50 loaned the plaintiffs in error by James S. Karr, added to the principal of the original note, made up (with usury included) the $1,150 note. When this note matured, it was also surrendered, and the note sued on, of $1,288, was given in lieu thereof. Upon the trial, the jury found as a matter of fact, that the defendant in error purchased the note of $840 in May 1872, and that the purchase was made in good faith by James S. Karr, and without notice to him that the note was usurious. Thereon, and upon

the general verdict in the case for the defendant in error, the court rendered judgment against said J. N. Roach for the full amount of the note sued on, (less the usury included therein and first embraced in the note of $1,150,) with interest and costs.

It is alleged on the part of said J. N. Roach, that the special findings and judgment were erroneous, for the reason that it appears from undisputed evidence that the purchase of the note of $840 by James S. Karr was not completed till in June or July, the time the note was delivered and paid for; and as J. C. Karr was appointed as the agent of James S. Karr in May 1872, and so continued to be for a long time thereafter, and as J. C. Karr had complete knowledge of all the transactions incident to the execution of the note of $840, and the amount of usury included in the said note, that the knowledge of J. C. Karr as to the usurious character of the note was notice to James S. Karr. An agent for all the purposes of his agency, stands in the place and stead of his principal, and is presumed to communicate to him every fact coming to such agent's knowledge, which might in any way affect the interests of his principal; but the knowledge must be of some matter connected with the business in which the agent is engaged for the principal. Notice to an agent, to be notice to the principal, must be as to a matter within the scope of the agent's employment. In this case, whether the note of $840 was purchased in May 1872, or not till June or July thereafter, is immaterial, as J. C. Karr acted at no time as the agent of James S. Karr to purchase or negotiate for this note. If he acted for any one other than in his own interest, he acted as the agent of his wife. There is no evidence in any way tending to prove otherwise; and James S. Karr is not chargeable with the knowledge of J. C. Karr as to the said note. James S. Karr left certain securities with him to look after in the way of collecting them, securing them, and of delivering them to him; but the agency of J. C. Karr did not extend to the purchase of this note. James S. Karr was, upon the evidence, an innocent purchaser of the note of $840,

before maturity, for a valuable consideration, and the said note having been duly transferred to him by indorsement, he could not be charged with any of the equities of J. N. Roach, having had no notice of the same prior to its purchase, and having made the purchase personally, and not through J. C. Karr or any other agent, he is not affected in this one transaction by the knowledge of J. C. Karr. Under this view of the case, it is unnecessary to discuss the various instructions of the court as to J. N. Roach's defense, as the testimony shows conclusively that the defendant in error was an innocent and *bona fide* holder of the note of $840 before maturity, and all usurious interest added to the subsequent notes was properly excluded by the court and jury.

As to the defense of Mrs. Roach, a more serious question is presented. But assuming the allegations of the answer sufficient, and that a verification thereof was not necessary to avoid the mortgage upon the facts set forth in the plea, still, considering all the evidence given and offered on the part of the said Mrs. Roach, we see no sufficient facts to justify a judgment in her favor. As to the execution of the mortgage in suit, Mrs. Roach testified:

"No one read the mortgage to me, and no one explained the nature of the mortgage to me. I inquired the nature of the papers before I made my mark to them. I believed it to be some notes my husband was giving. I cannot write, nor read writing. I can read a little in the Testament, by spelling the words. I didn't touch the pen until I asked questions. I did sign the papers. I think my husband held the papers on his knee. I never had them in my hand. On the 12th of next March, if I live, I will be sixty-four years old."

Mrs. Roach then produced one Ann Harkness, and offered to prove by her, that, "just prior to the time that defendant Elizabeth Roach made her mark to the mortgage, she inquired of her husband, J. N. Roach, what it was; that he told her it was none of her business; that the paper offered her to sign did not amount to a row of pins, and then told her to sign it; that he further told her that the paper was

only a note." The court excluded the proposed testimony. At the time of the execution of the mortgage in suit, it (such mortgage) and the note secured thereby were to take up a note of 28th February 1873 of $1,150, bearing twelve per cent. interest from date, executed by the plaintiffs in error, and to obtain a reconveyance of the title to the homestead from Mrs. Sarah A. Karr, to whom the same had been conveyed by a warranty deed in form as security for the original loan of $840 of 29th February 1872, and held by James S. Karr to secure the renewals of that note. There is no claim that James S. Karr had any notice of the conversation between Mr. and Mrs. Roach, which attended the execution of the mortgage at the time it was accepted by him, and for which he surrendered up the note of $1,150 and had the title to the homestead placed upon the records in the name of J. N. Roach. The mortgage was complete, except the signature of Mrs. Roach, when presented to her by her husband to be signed, and she at no time asked for it to be read to her. If she was in any manner mistaken or defrauded as to the contents of the mortgage, such result was the consequence of her own gross negligence. She should have demanded that the instrument be read to her. If she relied on the representations of her husband, it was at her peril alone. The sound policy of the law forbids that a person thus situated, as Mrs. Roach was, and signing a mortgage under such circumstances as herein presented, should thereafter, as against the mortgagee, innocent of any irregularity in the execution of the instrument, assert that she never consented to the execution thereof. *Helm v. Helm*, 11 Kas. 21; *Hallenbeck and Wife v. Dewitt*, 2 Johns. 404. A different rule would open the door to the grossest frauds, and lead to unfortunate results scarcely to be realized. With the view, that, considering all the testimony presented by Mrs. Roach, and all the evidence offered by her and which was excluded by the court, the court properly held the mortgage valid, and of full force for all moneys due thereon, deducting the usurious interest therein embodied, the questions raised as to the acknowledg-

ment, and the erroneous instruction as to the consideration of the testimony by the jury, need not be commented upon. These could not affect the validity of the judgment.

The judgment of the court below will be affirmed.

All the Justices, concurring.