Ely v. Pingry.

GEORGE H. ELY et al., as Executors of the Estate of
Heman Ely, deceased, v. WILLIAM V. PINGRY.

56 . 17
81 · 729

No. 7724.

1. PRINCIPAL, Bound by Knowledge of his Agent—Priority of
Mortgages. An investment company holding the funds of E. for
investment took a mortgage upon land to which R., the mortgagor,
had no title, and at a time when it was in the open possession of
another. When the loan was negotiated the investment company
knew that there were existing incumbrances upon the land, and
that the title thereto was not free and clear. The mortgage was
taken in the name of a member of the investment company, but
was immediately transferred to E., whose money had been used in
in making the loan. Afterward P., the actual owner of the land,
conveyed the same to R., and simultaneously with the delivery of
the deed took a mortgage from R. for the balance of the purchase-
money, but the mortgage taken by the company for E. was placed
on record before the purchase-money mortgage taken by P. Held,
Under the evidence, that the investment company and its manag-
ing members were the agents of E., and that he is bound by what
they knew and should have known in respect to the title, and that,
under the circumstances of this case, the mortgage of P. is para-
mount and prior to that of E.

2. DEED AND MORTGAGE—Simultaneous Execution. Ordinarily,
a grantor of land, who simultaneously with the execution of the
conveyance, takes a mortgage from the grantee for the balance of
the purchase-money is not required to search the records for in-
cumbrances by such grantee while he was a stranger to the title,
and before the deed of the grantor was executed.

2—56 KAS.

*Error from Miami District Court.*

ACTION to foreclose mortgages and to determine the priority of liens on a tract of land situate in the counties of Anderson, Franklin, and Miami. The cause was tried by the court without a jury, and the following findings of fact and conclusions of law were made and returned :

"FINDINGS OF FACT.

"1. On and prior to March 19, 1889, the plaintiff, Wm. V. Pingry, was the owner and in actual possession of the real estate described in plaintiff's petition, being 510 acres of real estate situated in Anderson, Franklin, and Miami counties, in the state of Kansas, and forming one body.

"2. That on said date and for more than a year prior thereto said land was incumbered for about $2,000.

"3. That on March 16, 1889, at Greeley, Kan., the plaintiff entered into a contract with the defendant Frank S. Rowlen for the sale of the real estate described in plaintiff's petition, which contract was partly in writing and partly parol ; a copy of so much of said contract as was in writing is attached to plaintiff's reply to the answer of the defendant, Heman Ely, filed in this case. That by the terms of said contract the plaintiff agreed to sell the said real estate to said Frank S. Rowlen for the sum of $8,000, to be paid as follows, to wit : $2,000 incumbrances to be assumed by said Rowlen ; $500 to be allowed said Rowlen by said plaintiff for the use and possession of said land for the year 1889 ; $50 to be allowed said Rowlen as expenses for clearing some supposed defect in the title to a part of said land ; $37.50 to be allowed said Rowlen for some accrued interest on the said incumbrance ; $450 cash ; and the balance to be paid : $1,000 in one year ; $1,000 in two years ; $1,000 in three years ; $1,000 in four years ; $962.50 in five years ; which sum of $4,962.50 was to be evidenced by

five promissory notes, to bear interest at 9 per cent., and to be secured by a mortgage upon the said real estate. It was further agreed that a deed for said real estate should be executed by the plaintiff and his wife to said Rowlen, and a mortgage covering the same land should be executed by the said Rowlen and his wife to the said Pingry to secure the said sum of $4,962.50 so evidenced by the said five promissory notes; that the said deed, mortgage, and the written contract and the said five promissory notes for the said sum of $4,962.50 should be deposited in the Bank of Greeley, there to remain until the said Rowlen should make the cash payment of $450 to said bank for plaintiff, when the said deed should be delivered to said Rowlen and said mortgage and the five notes should be delivered to said Pingry.

"4. The said written contract having been signed on the 16th day of March, 1889, late in the evening, nothing further was done until Monday, March 18, 1889, when a deed was prepared from the said Pingry and wife to said Frank S. Rowlen conveying the said real estate, and a mortgage covering the same real estate from said Rowlen and wife to said Pingry to secure the said sum of $4,962.50 so evidenced by the said five promissory notes, which mortgage, however, bears date March 16, 1889, which deed and mortgage were duly executed and acknowledged by the respective parties on March 18, 1889. That after the said deed and mortgage were executed and acknowledged, and on March 18, 1889, the said plaintiff took the said deed and written contract, and one Horace Grant, the notary public before whom said instruments were acknowledged, took the mortgage and the notes to the said bank and there deposited them pursuant to said agreement. The said deed and contract were placed by said Pingry in an envelope, upon which were written instructions to deliver the said deed to said Rowlen upon receipt of said $450, and said mortgage and notes were placed in a separate envelope, with instructions written thereon to immediately deliver the said note and mortgage to the said Pingry when the said sum

of $450 should be paid, and the said deed delivered to said Rowlen. That at the same time the said Pingry instructed the said bank to forward the said mortgage to the registers of deeds of the respective counties in which the said land was situated, and left with said bank the necessary money to pay for recording the same.

"5. That on Saturday afternoon, March 30, 1889, the said Frank S. Rowlen went to said bank and paid the said sum of $450 to the said bank for the use of the said W. V. Pingry, and the said bank then and there delivered to him the said deed from said Pingry, and placed the said $450 to the credit of said Pingry, the said Pingry afterward receiving said money in full.

"6. That after receiving the said deed, the said Frank S. Rowlen caused the same to be recorded in the office of the register of deeds of Anderson county on April 1, 1889, and in the office of the register of deeds of Franklin county on April 5, 1889, and in the office of the register of deeds of Miami county, May 1, 1889.

"7. The said mortgage from said Rowlen to said Pingry was placed in the United States mail by the said bank at Greeley, Anderson county, Kansas, some time between Saturday evening, March 30, 1889, and Tuesday, April 2, 1889, duly addressed to the register of deeds of Anderson county, at Garnett, Anderson county, Kansas, and was filed for record in said office on April 2, 1889, at 3 o'clock P. M., and was then by said register returned to said bank and by the bank forwarded to the register of deeds of Franklin county, where it was filed for record April 17, 1889, and was then returned by such register to said bank and by it forwarded to the register of deeds of Miami county, where it was filed on April 19, 1889, the said mail being the usual and ordinary method of transmitting such instruments from Greeley.

"8. That prior to March 16, 1889, the said Pingry had rented the said land to one C. Bishop, a single man, who had been a member of said Pingry's family

from childhood, and had prior thereto received from said Bishop the rent for one year—there being no definite agreement as to the length of time such lease should continue. That said Bishop, about March 20, 1889, re-leased about one-third of said place to one Cummings, who moved into the house previously occupied by said Pingry and family, and has ever since resided thereon, the said Bishop boarding in his family.

"9. The said Pingry, on March 19, 1889, moved from said farm, and with his family removed to the state of California, where they have since resided, he having prior thereto informed his tenant, Mr. Bishop, that he had sold his farm to Mr. Rowlen.

"10. That some time during the month of March, 1889, the said F. S. Rowlen applied to the Investment Banking Company, of Topeka, for a loan of $6,000, to be secured by mortgage upon the real estate described in plaintiff's petition; that on March 15, 1889, Mr. A. T. Daniels, the secretary of said company, went to Greeley, Anderson county, Kansas, and to the said farm of plaintiff, in company with said Rowlen, to examine the said land for said company; that he made the examination and returned to Topeka.

"11. On March 27, 1889, the said Rowlen made a written application to said company in regular form for the said loan of $6,000 upon the said real estate in controversy, stating in said application, among other things, that he was the owner of said land, free from incumbrance, and on the same day executed this bond for $6,000 to J. N. Strickler, cashier for said company, and also made, executed, and acknowledged, together with his wife, a real-estate mortgage to secure the said loan upon the real estate in question. That on the 28th day of March, 1889, the said Rowlen delivered the said bond and mortgage to the said company, and received from them the consideration for the same. The said bond and mortgage bore date March 1, 1889.

"12. That on the 27th day of March, 1889, when the said investment company accepted the said bond and mortgage from the said Rowlen and paid the

consideration therefor, he represented to them that he was the owner of the said real estate so conveyed by said mortgage. That the same was incumbered, but of the exact amount of said incumbrance he did not inform said company, nor did it know, except that said Rowlen stated that such incumbrance did not exceed $2,000. The said Rowlen agreed, however, with said company that he would pay off said incumbrance and make the said company's mortgage a first lien upon the said land. The said company, when it accepted the said bond and mortgage from the said Rowlen and paid the consideration therefor, had no abstract of title for said real estate, or any part thereof, and had never inspected the records in the offices of the registers of deeds in the respective counties in which said land was located to ascertain the condition of the title to said land, but relied entirely upon the statement of said Rowlen that he was the owner of the said real estate and would pay off such incumbrances as were then upon said land. The said company had no actual notice or knowledge of Mr. Pingry's rights to said real estate when it accepted such bond and mortgages.

"13. Prior to March 18, 1889, the said investment company had been negotiating with the defendant Heman Ely for the sale of another $6,000 bond and mortgage, and on March 16, 1889, the said Ely remitted to said banking company his draft on New York for $6,021, being the face of such other bond, with interest from March 1, 1889, to purchase such other bond and mortgage which was never sent to him. The said money was received by said company on March 18, and placed to the credit of Mr. Ely upon the books of the company on March 20, 1889. That on March 28, 1889, the said company upon the receipt by it of the $6,000 bond and mortgage from said Frank S. Rowlen immediately indorsed said bond to the said Heman Ely, without recourse, and without knowledge on the part of said Ely of the existence of said note and mortgage; and duly assigned the said mortgage to said Ely and March 29, 1889, mailed the

said bond and the said application of Rowlen for said loan to the said Ely at his home in Elyria, Ohio; and on the same day sent the said mortgage, properly assigned to said Ely, to the register of deeds of Anderson county, Kansas; and on the same day charged the said Ely upon the books of the company, to wit, $6,021, and informed said Ely by letter accompanying said bond that a mortgage of even date would follow as soon as recorded.

"14. The said mortgage, with the assignment thereon to said Ely, was filed for record in the office of the register of deeds of Anderson county, Kansas, on March 29, 1889, and in the office of the register of deeds of Miami county, Kansas, April 3, 1889, and in the office of the register of deeds of Franklin county, Kansas, April 6, 1889. The said assignment was not acknowledged.

"15. The said Heman Ely received the said bond on or before April 2, 1889, and executed a written receipt for the same to said company under date April 2, 1889, which receipt and the letter accompanying it are in words and figures as follows:

'*Elyria, Ohio, April 2, 1889.*—Received of The Investment Banking Company, of Topeka, Kan., papers as follows, in loan No. 652: First, note with coupons attached; second, insurance policy.— HEMAN ELY.'

'OFFICE OF HEMAN ELY, ELYRIA, OHIO, April 2, 1889.
'*The Investment Banking Company, Topeka, Kan.:* GENTS— Your favor of March 29, with stated inclosures, was duly received, and I inclose herewith my receipt for (1) note of Frank S. Rowlen on March 1, $6,000; (2) insurance policy. I thank you and your Mr. Pounds for the care you have taken in placing this loan, which appears to me to be in all respects first-class, and hope it will prove so.— HEMAN ELY.
'P. S.—I return as requested the application of Frank S. Rowlen, received from you in your letter of March 16.'

"16. The said mortgage, after its record, was forwarded to the said Ely on April 8, 1889, and received by him on or before April 10, 1889.

"17. The said Heman Ely is now and was then living at Elyria, Ohio, and has never been in Kansas, and had no actual knowledge of the real estate in question, or of the condition of the title thereto, except such knowledge as he ascertained through the

said The Investment Banking Company and through L. H. Pounds, its vice-president, and the said written application of said Rowlen, sworn to by him. He had no knowledge of the value of said real estate, except the appraisement by two men in said application of $18,000, but relied solely for the safety of his investment upon the judgment of said Investment Banking Company and said L. H. Pounds, its vice-president, with whom he had been acquainted for many years, and who, on or about March 1, 1889, had made him a personal visit with a view to induce him to invest some money in loans negotiated by said company.

"18. At the time the plaintiff executed and delivered his said deed to said Rowlen he had no actual notice or knowledge of the mortgage made to said J. N. Strickler for said Investment Banking Company.

"19. The said Frank S. Rowlen was never in possession of the real estate in question, and never exercised any acts of ownership over the same, except to execute said $6,000 mortgage thereon. That said mortgage of Frank S. Rowlen and wife to plaintiff Wm. V. Pingry contained an exception of certain mortgages, and in a part of said exception there were interlineations, and a part of said interlineations was again written over, and said mortgage was erroneously recorded by the registers of deeds of Anderson and Franklin counties, at the times aforesaid, as excepting a mortgage of $6,000, and was correctly recorded by the register of deeds of Miami county, as excepting a mortgage of $1,500 and not of $6,000, and such records have so remained ever since.

"20. At the time of the bringing of this suit there was due and owing to the defendant William Drake from W. V. Pingry, upon his note, $500 and interest; there was due and owing the plaintiff from Frank S. Rowlen the sum of $4,962.50 and interest; there was due and owing the defendant Heman Ely from the said Frank S. Rowlen the sum of $6,000 and interest; there was due to the Western Security Company $10 and interest."

"CONCLUSIONS OF LAW.

"1. That said claim of $500 and interest due to said defendant William Drake on the note and mortgage set out in his answer is a first lien on so much of the land described and embraced in said $500 mortgage.

"2. That the claim of $10 and the interest thereon to the Western Security Company on the $50 note and mortgage set out in the answer of said Western Security Company is a second lien on so much of the lands described in plaintiff's petition as are described in the answer of said Western Security Company.

"3. That the claim of the plaintiff, William V. Pingry, against defendant Frank S. Rowlen for $4,962.50 and the interest thereon, due on the five promissory notes and mortgage set out in the plaintiff's amended petition, is a first lien on all the lands described in said plaintiff's petition, except the said claim of $500 and interest above referred to, and the said claim of $10 and interest above referred to.

"4. That the claim of the defendant Heman Ely against defendant Frank S. Rowlen for $6,000 and interest thereon, due on the $6,000 bond and mortgage set out in the answer of the said defendant Heman Ely, is a lien on all the lands described in the plaintiff's petition, but is subject to and inferior to the lien of the said plaintiff, William V. Pingry, for $4,962.50."

Judgment was accordingly rendered. Heman Ely duly excepted, and brought the case here for review. Heman Ely having since died, the proceeding in error was revived in the name of his executors.

*A. Bergen*, for plaintiffs in error.

*Mechem & Smart*, for defendant in error.

The opinion of the court was delivered by

JOHNSTON, J.: The controversy in this case is as to the relative priority of two mortgages upon a single tract of land situated in three counties. One of them

belongs to Pingry, who conveyed the land to Rowlen, and, simultaneously with the delivery of the deed, Rowlen delivered to Pingry a mortgage upon the same land for a part of the purchase-money. The other is the Ely mortgage, which was executed and delivered by Rowlen before Pingry conveyed the land to him, and before he had any title thereto. The land was conveyed from Pingry to Rowlen on March 30, 1889, and the mortgage to Pingry was delivered at the same time. The Ely mortgage was recorded in Anderson county, where a portion of the land was situated, on March 29, 1889, which was one day before any title had vested in Rowlen. Ely claims priority by virtue of the prior recording of his mortgage in the several counties in which the land was situated, while Pingry claims that he was not bound to search the records for conveyances made by his grantee before the execution of his deed, and while the grantee was a stranger to the title. He also insists that The Investment Banking Company, whose officers negotiated the loan with Rowlen, had knowledge of the record title, and that such knowledge as they possessed must be imputed to Ely, for whom they acted. After the land was actually conveyed to Rowlen, the first mortgage to be recorded was that given to Pingry for the purchase-money, which was filed for record in Anderson county on April 2. The Ely mortgage was filed for record in Miami county on April 3, when the records of that county showed the title to be in Pingry. It was filed for record in Franklin county on April 6, when the records of that county indicated that the title was in Pingry. The Pingry mortgage, however, was not recorded in Franklin county until April 17, nor in Miami county until April 19. Rowlen had neither a legal nor equitable title to the land

at the time the Ely mortgage was executed and delivered, and he had not even possession upon which to base a right to mortgage. The possession remained in Pingry until the deed was delivered, and as Rowlen had no possession nor any vestige of title, the mortgage which he made could not attach before the conveyance by Pingry to him. It would seem that the priority of the record of the Ely mortgage could not avail as notice to Pingry of its existence. In such a case it has been held that

"A vendor of real estate has no occasion to examine the records for incumbrances created prior to his conveyance. He has the power to protect himself by a qualified or conditional transfer, or by any legal mode of creating a lien to secure himself for unpaid purchase-money. When he conveys, and instantly takes a reconveyance as such security, no authority is needed to demonstrate the gross injustice of permitting a prior mortgage from intervening to his prejudice." (*Dusenbury v. Hulbert*, 59 N. Y. 541.)

In *Schoch v. Birdsall*, 48 Minn. 441, a somewhat similar case, it was said that the grantor "was not bound to search for conveyances made by his grantee while the latter was a stranger to the title, and before the execution of his deed, and the defendant whose mortgage was recorded before plaintiff's conveyance was not a subsequent *bona fide* mortgagee within the meaning of the recording act."

2. Deed and mortgage; simultaneous execution.

See, also, *Turk v. Funk*, 68 Mo. 18; *Ford v. Unity Church*, 120 id. 498; *Boyd v. Mundorf*, 30 N. J. Eq. 545; *Heffron v. Flanigan*, 37 Mich. 274; *Loan Co. v. Maltby*, 8 Paige, 361; *Gould v. Wise*, 32 Pac. Rep. 576; 1 Jones, Mortg. § 568; 1 Devl. Deeds, § 724.

Apart from this consideration, the facts of the case and findings of the trial court in respect to the rela-

tions existing between Ely and The Investment Bank-
ing Company and its managing members require an
affirmance of the judgment. It is, in effect, found
that the members of the company, in making the
loan, were the agents of Ely, and that he is charge-
able with the notice which they had, and is bound by
what they knew or should have known. Pounds, the
vice-president of the company, had been acquainted
with Ely for many years, and had made him a visit
shortly before the making of the loan with a view of
inducing Ely to allow the company to invest his
money in Kansas securities. In accordance with ar-
rangements then made, Ely forwarded money to them
for investment, and it was this money which was
loaned by the company to Rowlen. It is true that the
mortgage first considered was not the one which was
finally accepted, but it was made by the same man
and covered much of the same land ; and it further
appears that in making the investment in both in-
stances Ely relied upon the discretion and judgment
of the members of the company, and especially
Pounds, its vice-president and active official. Ely re-
sided in Ohio, and had no knowledge in regard to the
Pingry land or the title thereto, except what was ob-
tained through the company. The money was for-
warded by Ely on March 18, 1889, and was received
by the company two days later. Although the loan
first considered was not made, the money was allowed
to remain with the company until it was invested in
the Rowlen mortgage, on March 28. When the money
was received it was credited to Ely on the books of
the company, and when the Rowlen note and mort-
gage were taken, on March 28, they were at once
transferred to Ely, and he was charged upon the
books of the company with the note and mortgage.

The note and other papers were forwarded to Ely on March 29, and the acknowledgment of the receipt of the same on April 2 indicates the relations which existed between him and the members of the company. He said : ''I thank you and your Mr. Pounds for the care you have taken in placing this loan, which appears to me to be in all respects first-class, and hope it will prove so.'' It therefore appears that Ely furnished the money to the company for investment ; that he depended on the members of the company for the safety of his investment, and trusted to them to place the loan which was made. By their action Ely became the owner of the Rowlen note and mortgage on March 28, 1889, and instead of repudiating their action, his subsequent conduct has been rather to ratify and adopt it as his own. As they were agents of his in the transaction, he is

1. Principal bound by knowledge of agent.

held to know what they knew, and what they would have learned by a reasonable inquiry and investigation. Although Rowlen told them that he owned the land, no abstract of title was furnished, nor did they make an examination of the public records to ascertain the condition of the title. One of the managing members of the company visited the land, and discovered that it was occupied by and in possession of another. At the time the loan was negotiated, Rowlen notified them that there was an incumbrance upon the land, but they left it to him to discharge that incumbrance. They therefore knew that the mortgage taken was not a first mortgage, and, having actual knowledge that the land was incumbered, prudence required that they should follow up the clue and ascertain from those in possession and the records what was the true state of the title. If they had done so, they would have found that Pingry

was the absolute owner of the land, and in possession of the same, and that Rowlen had no title which he could incumber or convey. Ely, therefore, did not part with his money on the faith of the record, and so far as the recording goes he does not occupy the position, nor is he entitled to the protection, of an innocent and *bona fide* purchaser or holder. (*Mitchell v. Aten*, 37 Kan. 33.) See, also, *School District v. Taylor*, 19 Kan. 287 ; *Greer v. Higgins*, 20 id. 420 ; *Dusenbury v. Hulbert*, supra.

As Ely cannot be regarded as the *bona fide* purchaser of a mortgage executed by one holding the record title or mortgage interest, the principles which he invokes and the cases which he cites are not applicable. If the company had taken and held the mortgage, the managing members thereof could not have claimed to have been without notice in regard to the title, nor have claimed any benefit on account of the prior recording of the Rowlen mortgage, and Ely, for whom they were acting, occupies no better position. When he acquired the mortgage, Pingry was the actual and apparent owner of the land, and Ely could not and did not therefore part with his money on the faith of a title in Rowlen.

We think the testimony is sufficient to sustain the findings of the court, and that they support the judgment which the court rendered.

The questions raised upon the pleadings and upon the admission of testimony are not such as to require special comment.

Judgment affirmed.

All the Justices concurring.