WILLIAM DESPAIN, *Appellee*, v. THE PACIFIC MUTUAL LIFE INSURANCE COMPANY, *Appellant*.

No. 16,322.

SYLLABUS BY THE COURT.

1. INSURANCE—*Representations by the Applicant—Waiver—Authority of Agent.* An agent for an accident-insurance corporation who has authority to solicit insurance, take applications, and countersign and issue policies therefor, binds the company by any waiver of any representation in the application which is within the ordinary scope of insurance business and not known by the assured to be outside of the authority granted to the agent.

2. ——— *Presumptions—Waiver—Notice to Principal.* When an applicant for insurance tells such an agent facts which are contradictory to statements contained in the application,

which application the agent procured the applicant to sign knowing that he had not read the same and that his attention had not been called to such statements, the agent may and will be presumed to have waived the statements in the printed application on behalf of the company, and the company will be presumed to have known all the facts communicated to such agent during the transaction and relating thereto; and this notwithstanding the application contains a restriction upon the authority of the agent to make such waiver, the applicant being ignorant of such restriction, at least until after the policy was issued and securities were taken for the payment of the premium.

Appeal from Wyandotte court of common pleas; LEWIS C. TRUE, judge. Opinion filed February 12, 1910. Affirmed.

*W. H. Davis, J. C. Rosenberger, Clyde Taylor,* and *Kersey Coates Reed,* for the appellant.

*C. O. Littick, T. P. Anderson,* and *E. K. Robinett,* for the appellee.

The opinion of the court was delivered by

SMITH, J.: This case has been in this court before on appeal from a judgment rendered on a former trial. (*Insurance Co. v. Despain,* 77 Kan. 654.) The general statement of facts may there be found. On the second trial the case was tried to a jury and a verdict was returned in favor of the appellee, which was approved by the court and judgment accordingly rendered.

Three assignments of error are made by the appellant, which are argued as one, and may briefly be stated to be that the appellee in his own evidence admitted breaches of the written warranty made by him in his application for insurance, and that the policy was therefore void.

The appellee testified in substance as to what transpired at the taking of the application as follows: The appellee was at work repairing a box car on the inside, and M. R. Johnson and a local agent by the name of Poland got up in the door of the car and told him they

wanted to write insurance for him.  He told them he did n't want any.  There was talk back and forth while he kept on working.  One of them commenced to write the application.  Johnson asked him if he had been sick or in the hospital.  He replied, "Poland knows that." He told them he was up there in October for a slight injury to his right eye, but that at this time his eye had fully recovered; that he was in the hospital at Topeka; that he did n't have to go to the hospital, but Doctor Clopper (local doctor of the Santa Fe railway company where he was employed by the company) told him to go there, that he could not work, and that the railroad company would not pay him his wages during the lost time unless he went to the hospital, and he went up there to receive his wages.  He told them he had been up there for treatment of his eye, and pointed it out to them; told them his right eye had been bruised up and bloodshot in October; that he was not confined to the house; that he had not had any medicine; that a little water was poured into his eye when he was at the hospital; said that they, Poland and Johnson, were very close together and looked right into his face and eyes; that he was working all the time they were asking these questions and when the application was being made out, and when it was finished they told him to take it and read it if he wanted to.  He replied that he did n't have time.  He also testified that they gave him plenty of time to read the application, but he did n't read it, but continued to work.

M. R. Johnson, the agent, testified about the same matter.  The application contained several statements purporting to be the statements of the appellee, which are embraced in the single quotation marks in the questions below.  Johnson is the witness testifying:

"Ques.  Did you read this to him, or ask him this: 'I have made no application for insurance against accident and sickness upon which I have not been notified of the action thereon, or no application ever made by me against accident or sickness has ever been declined, and

no policy against accident or sickness by me has ever been canceled or renewal refused by this or any other company or association, except as herein stated'? Did you read that to him or state it? Ans. No, sir.

"Q. Did you read this to him: 'I have never received or been refused compensation for accidental injuries or sickness, except as herein stated'? A. No, sir.

"Q. Did you ask him whether he had received compensation for accidental injuries or sickness? A. No, sir.

"Q. Did you read this to him, or ask him: 'My habits of life are temperate and I am not crippled or maimed, nor do I have any bodily or mental insanity— infirmity, nor am I subject to fits, disorders of the brain, defective hearing or vision, except as herein stated'? Did you read that to him? A. No, sir.

"Q. Did you ask him anything about that? A. No, sir.

"Q. 'I have not been exposed within the last ten days to any infectious or contagious disease, nor have I now or during the past year had any local or constitutional disease or been confined to the house by reason of any disease or illness, or had any medical attention, except as herein stated.' Did you read that to him? A. No, sir.

"Q. Did you ask him anything about that? A. No, sir, I did n't.

"Q. Did you read this question to him: 'I have never received or been refused compensation for accidental injuries, except as herein stated'? A. No, sir.

"Q. Did you ask him anything about that? A. No, sir.

"Q. Did Mr. Despain read the application? A. I don't believe he did.

[On objection this last answer was stricken out as incompetent, irrelevant and immaterial.]

"Q. All that you did was to ask the questions, the answers to which you wrote in the application at the time? A. Yes, sir.

"Q. Did you ask him [the appellee] his age? A. Yes, sir.

"Q. Did you ask him anything else? A. I asked him his age, his height and weight, his beneficiary's name and his post-office address.

"Q. Anything else? A. That is all."

The statements set forth in single quotation marks in the foregoing questions are all the material representations which are claimed to be false in the application, but the application contained this further statement:

"I understand that no alteration or waiver of the conditions or provisions of any policy is valid unless made in writing at the company's home office and signed by the secretary or assistant secretary, and that no notice to or knowledge of any agent or any other person of anything not written in this application is to be held to effect a waiver or estoppel upon the company or affect the provisions of any policy."

The appellant claims that by reason of the statements in the application, which are claimed to amount to warranties, the policy is void, because the appellee admitted on the witness stand that his right eye was injured in October, and that he went to the hospital for treatment, although he claimed that he went to the hospital on the order of the local physician and that it was not necessary. Also, the appellant claims that even if the appellee made the statements to Johnson and Poland which he testifies he made at the time the application was taken, it did not constitute any notice to the company and there was no waiver of the alleged warranties set forth in the application.

The question whether the appellee gave the agents the information which he testifies he did was for the jury, and they answered it in favor of the appellee. The question whether Johnson or Poland did under the circumstances waive, or have authority to waive, the alleged warranties in the application was for the court. On this point the testimony of Poland as to his agency, which is uncontradicted, shows that he was only a local agent, without authority to write policies. Johnson, however, testified that his authority was to solicit insurance, take applications and issue policies, and that he did take the application in this case and issue the policy. The policy itself also shows that it was coun-

Despain v. Insurance Co.

tersigned by Johnson, and there is no evidence that any general officer of the insurance company ever saw it, the evidence being that the signature of the president and secretary of the insurance company were stamped thereon.

No objection to the introduction of testimony is presented by the appellant, but several instructions given by the court to the jury are alleged as error, including the refusal of the court to instruct the jury to return a verdict for the appellant. The principal question presented is whether the agent Johnson was a general agent of the company and had power to waive any of the warranties embraced in the application notwithstanding the notice in the application that no agent had such authority, and if so whether Johnson did in fact waive the alleged warranties in the application by issuing the policy when he knew that the appellee's attention had not been called to such warranties or to the restriction upon the agent's authority, and knew that the appellee had not read the application containing such warranties and restriction.

The policy in question is contested by the company on the ground of want of authority of the agent to waive any statement or guaranty in the application, but it was not repudiated by the company on the ground that it had been countersigned and issued by Johnson without authority. On the other hand, the answer confirms the act of Johnson in this regard; it admits "that it [the appellant] did on the 20th day of December, 1904, execute and deliver unto plaintiff a certain written policy of accident insurance, which policy is attached to plaintiff's petition and marked 'Exhibit A.'"

It appears, then, that Johnson assumed to, and did, exercise plenary powers as general agent of the company (2 Enc. L. & P. 942, note 16), and that his action in so doing was expressly ratified by the corporation, even if such power had not been previously conferred upon him. Johnson testified as a witness for the ap-

pellant that he had power to solicit insurance, take applications, and issue policies; also that he wrote the application, using a printed form, at the bottom of which, and above the signature of the appellee, appears this: "Policy dated Argentine the 20th day of December, 1904." It thus appears that Johnson had authority to consummate the entire transaction. Such an agent may for any reason waive for the company any stipulation in the policy which the company has power to waive and which the assured does not know to be outside of the authority granted to the agent. (*Insurance Co. v. Barnes*, 41 Kan. 161, 163. See, also, *Am. Cent. Ins. Co. v. McLanathan*, 11 Kan. 533; *Insurance Co. v. Hogue*, 41 Kan. 524; *Insurance Co. v. Munger*, 49 Kan. 178; *Insurance Co. v. National Bank*, 58 Kan. 86; *Insurance Company v. Wilkinson*, 80 U. S. 222.)

Numerous authorities are cited as in opposition to this doctrine, notably *Assurance Co. v. Building Association*, 183 U. S. 308. The opinion in that case by Mr. Justice Shiras is exhaustive on the question of the power of fire-insurance agents to waive in behalf of their companies express conditions on policies issued. The decision was rendered by a divided court, and shows the great contrariety of opinion in the numerous cases cited from other courts. So far as appears, that case related to the authority of the ordinary soliciting agent, and it was held that such agent had no such authority. The only propositions of law therein which appear to have any relation to this case are the following:

"Where fire-insurance policies contain provisions whereby agents may, by writing indorsed upon the policy or by writing attached thereto, express the company's assent to other insurance, such limited grant of authority is the measure of the agent's power.

"Where such limitation is expressed in the policy, the assured is presumed to be aware of such limitation.

"Insurance companies may waive forfeiture caused by nonobservance of such conditions.

"Where waiver is relied upon, the plaintiff must

show that the company, with knowledge of the facts that occasioned the forfeiture, dispensed with the observance of the condition.

"Where the waiver relied on is the act of an agent, it must be shown either that the agent had express authority from the company to make the waiver, or that the company, subsequently, with knowledge of the facts, ratified the action of the agent." (Syllabus.)

It will be observed that it was held that the company by an authorized agent may waive such conditions in a policy. Indeed, there seems to be no conflict in the authorities as to the power of a corporation to waive any condition in a written contract as fully and freely as may an individual. Probably the president, secretary or general manager of such a corporation, as the general executive agent thereof, would be presumed without proof to have authority to make such a waiver; but as to the ordinary soliciting agent, at least, this decision throws the burden of proving authority to make the waiver upon the assured or others asserting such waiver. Whatever may be the law in other jurisdictions, it is the settled law of this state, as we have seen, that an agent who has authority to consummate the entire transaction is presumed to have authority to make any waiver within the ordinary scope of insurance business which is not known by the assured to be outside of the authority of the agent.

But it is said the assured should have known the limitation upon the agent's authority, especially after he had received his policy, with a copy of the application attached, and that he should then have notified the company of the facts. It is a well-recognized principle of law that a corporation is presumed to know all that comes to the knowledge of its agents during the pendency of a transaction, and relating thereto, which the agent is authorized to consummate. (*Greer v. Higgins,* 8 Kan. 519; *Ayres v. Probasco,* 14 Kan. 175; *Nicklisson v. Holman,* 17 Kan. 22; *Roach v. Karr,* 18 Kan. 529; *Ely v. Pingry,* 56 Kan. 17.)

The appellee had a right after he received his policy to presume that the company knew whatever had been communicated to Johnson before the policy was issued. And if, as he testified, the facts contradictory to certain statements in the application had been communicated by him to the agent, he rested under no obligation to communicate such facts to any other agent or officer of the company, but had a right to presume that the officers of the company knew of such facts.

We have examined the several other questions discussed, but find nothing which we think should reverse the judgment in this case. Permitting a local agent to testify as to what the company owed the appellee was probably erroneous, but the instruction of the court practically withdrew such evidence from the consideration of the jury.

The judgment is affirmed.