THE INHABITANTS OF WINDSOR *vs.* THE INHABITANTS OF CHINA.

In the computation of time from an act done, the day on which the act is done will be excluded, wherever such exclusion will prevent an estoppel, or save a forfeiture.

Thus, in the computation of the two months, mentioned in *Stat.* 1821, *ch.* 122, *sec.* 17, the day of giving the notice is to be excluded.

Supplies furnished by order of one of a board of overseers, acting under a parol agreement with the rest of the board relative to the general manner of executing their office, are supplies furnished " by some town," within the *Stat.* 1821, *ch.* 122, *sec.* 3.

THIS was an action of *assumpsit* for the support of *Betsey Perkins*, a pauper, daughter of *Joseph Perkins*, with whom it appeared that she lived and had her home in *Harlem*, now *China*, on the 21st day of *March* 1821, she not being then emancipated from her parents.

At the trial before *Weston J.* in *October* term 1825, it was proved that notice was given from the overseers of *Windsor* to the overseers of *China*, on the 20th day of *October* 1823, at ten of the clock in the forenoon, and that an answer was received by the overseers of *Windsor* on the 20th day of *December* 1823, just before sunset.

Hereupon the plaintiffs contended that no answer was returned to their notice within the two months mentioned in the statute ; and that the defendants were therefore estopped from contesting the settlement of the pauper; but the judge ruled that the estoppel had not attached.

The defendants then proved by *Joseph Stewart* that he had found an order in his hand writing, drawn by him while he was an overseer of the poor of *Harlem*, of the following tenor ;—"*March* 27, 1820. Mr. *Jason Chadwick*, please to deliver to *Joseph Perkins* one fourth of a quintal of fish, on the town account. By order of the overseers of the poor, *Joseph Stewart*." He further testified that he had no previous consultation with the other overseers relative to supplying the pauper, or to drawing the order ; but that there was an understanding between the overseers for that year, that

Windsor v. China.

either one of them might advance supplies to any person in the town, standing in need of relief, without consulting the other overseers ; that the same understanding among the overseers had existed and been practised on in *Harlem* for many years before ; that *Joseph Perkins* had been furnished with supplies as a pauper in 1817 and in 1821 by the town of *Harlem* ;—and that while he lived in the town he was considered a very poor man. It further appeared that the order was accepted and paid on the day of its date, by *Chadwick*, who charged it to *Stewart* in his private account ; and that *Stewart* charged it to *Harlem* in 1822, by which town it was duly paid. There was other testimony, on both sides, upon this part of the case, all of which was left to the jury.

The plaintiffs then contended that even if the supplies had been furnished to *Perkins* within a year next before *March* 21, 1821, yet being furnished by one only of the overseers, the case was not brought within the exception in the settlement act. But the judge ruled it sufficient, if the jury were satisfied that the overseer acted under the authority of the whole board; and they accordingly returned a verdict for the defendants ; which was taken subject to the opinion of the court upon the points raised at the trial.

The arguments of counsel were delivered in writing, in vacation.

*Sprague*, for the plaintiffs, contended that more than two months had elapsed, between the giving of the notice and the return of the answer. If parts of a day were to be regarded, this point was clear, upon the facts of the case. And if not, yet both the days cannot be included in the computation ; for that would be to comprise three 20th days, in two months. The effect of this mode of computation he illustrated, by beginning on the first day of *January*, and including the first day of *February* in the first month ; in which case the second month would commence with the second day of *February*, and end with the second day of *March*, and so on ; thus extending twelve months, to a year and twelve days. Rejecting fractions of a day, the defendants had notice during the whole of the 20th day of *October*, and the two months from that time expired with the 19th day of *December*.

This position is supported by authority. *Presbrey & al. v. Williams* 15 *Mass.* 193. *Doug.* 465. The rule there laid down is, that when time is to run from a certain day, the day is excluded ; but when it is from an act done, the day of the transaction is included. In the case at bar it is from an act done, viz. the delivery of notice. 1 *Dane's Abr.* 535, § 1, 2, 3. The different computation, adopted in cases of attachments of property and promissory notes, are exceptions to this general rule.

He further argued that the aid furnished to *Joseph Perkins* was not supplies "from some town," within the meaning of the statute ; because the order was drawn by one only of the overseers. The power to provide for the relief of the poor is delegated to them collectively, as a body ; and it is a personal trust in their discretion, which cannot be executed by attorney. If it could, the authority ought to be conferred expressly, and by a vote of the board of overseers; and not by a vague understanding among the individuals composing it.

*Boutelle*, for the defendants, insisted that to prevent the operation of the estoppel, which is not to be favored, the day of giving the notice ought to be excluded. The month, in our statutes, is always a calendar month ; *Hunt v. Holden* 2 *Mass.* 168. *Avery v. Pixley* 4 *Mass.* 460 ; and the words "within two months after the notice," are equivalent to saying "within two months after the day or time when the notice was delivered to the overseers." The law not regarding fractions of a day, except to serve the purposes of justice, the day on which the notice was delivered must be fully complete and ended, before the period of two months can commence. Such is the obvious intent of the statute in the present case. Previous to the case of *Pugh v. The Duke of Leeds, Cowp.* 714 which was decided in 1777, the construction of the words "from the date," and "from the day of the date," had been perpetually vibrating ; the day being sometimes included, and sometimes not ; and the decision probably influenced by the supposed merits of each particular case. But the only just and sound rule is that which excludes the day of the date. The rule laid down in *The King v. Adderley, Doug.* 465, opposed to

this, is founded on a distinction without a difference ; for whenever a computation is to be made from or after any given day or date, it has been uniformly held, since the case of *Pugh v. D. of Leeds*, that the day was to be excluded; yet in every case of this kind an act is done on the day ; and the difference is only in the form of expression. The rule in *The King v. Adderley* is professedly derived from the case of *Bellasis v. Hester* 1. *Ld. Raym.* 280, in which it was decided that in a note payable in ten days after sight, the day of sight is to be excluded. And *Ld. Mansfield*, in commenting on this case, expressly says that after the day, and after the sight is, in language, precisely the same. It is also worthy of notice that in *The King v. Adderley* the principal reason assigned by the court is, that it was a penal proceeding against the defendant, who was therefore entitled to a favorable construction of the statute. The authorities to this point are collected in *Bigelow v. Wilson* 1 *Pick.* 485.

As to the second objection, he contended that the authority of the board of overseers to afford relief to paupers, might be delegated to one of their number, as well as the authority to sign notices in behalf of the board; which latter act has been sanctioned by numerous decisions. And a parol delegation was sufficient. But if it was not, yet in the present case the act has been adopted and ratified by the town, by the settlement and payment of the bill for the supplies furnished in their behalf.

*Allen*, in reply, said that the reason why estoppels were not to be favored, was because they excluded the justice of the case. But that reason did not exist here, where the whole matter rests upon the positive enactments of a statute, devolving on corporations liabilities which have no moral foundation whatever, but rest wholly on arbitrary legislation. The principles of justice are as much affected by refusing to apply the estoppel, as by admitting it.

Upon principle, the day of sending the notice ought to be computed. If a policy of insurance of buildings against fire had been made on that day, and for the same term, and a loss happened on the same day, after the execution of the policy, would it be contended that the loss was not within the policy ? And is it not

equally clear, that had the loss happened after *Dec.* 20th, the underwriters would not have been holden ? The objection that the defendants' computation does not leave time enough for the other five sixths of the year, is insurmountable.

To the other point, he argued that if the overseers could delegate their authority to administer relief, it could only be after they had adjudged relief to be necessary. It is only the ministerial act of advancing supplies, and signing notices, that may be done by attorney. To allow them to delegate to others their judicial or discretionary powers, would enable them, in effect, to substitute overseers whom the town never appointed. See *Powers v. Ware* 2 *Pick.* 485.

The opinion of the court was delivered in *Cumberland* at *November* term 1826, as follows, by

MELLEN C. J. · This case presents two questions; 1st, are the defendants estopped to contest the question of the pauper's settlement ? 2d. If not, is that settlement in China ? As to the first point ;—the words of the statute of 1821, *ch.* 122, relating to the subject are—"and if such removal is not effected nor objected "to by them, in writing, after such notice, to be delivered in writ- " ing, within two months after such notice to the overseers of " the town," &c. &c. The notice was given to *China, Oct.* 20, 1823 ; and the answer was given to *Windsor, Dec.* 20, 1823. If the day on which the notice was given to *China* is to be included in the computation of time, the answer was given too late ; but if excluded, then it was returned in due season. The difference between the hours of the days on which the notice and answer were given, can be of no importance in the present case. By a fiction of law there are no fractions of a day, except in some particular cases, where the fiction is made to give place to the exact truth, to prevent injustice, and for the purpose of ascertaining the priority of acts done on the same day.

A distinction appears in the books to have been made between the common law and the law merchant, on this point; in the latter case, the day of the date of a bill of exchange or of an accep-

tance, and the date of a promissory note, being excluded. *Chitty on Bills* 205. 5 *Com. Dig.* 81. But in other cases it is generally included; though upon this point much uncertainty and confusion, have existed, decisions have been contradictory, and distinctions have been made without any real difference; often defeating the intention of the parties. Of late years, courts have paid more respect to the good sense of the thing, and to the object in view of all concerned, whether in the construction of a statute or of a contract. A rule perfectly uniform, would seem to have been more desirable; because more simple and intelligible. There appears to be as much reason for excluding the day of the date of a deed, lease or other contract, as of a bill of exchange, acceptance or promissory note; and that the same rule might be applied to the date of a statute, where no day is expressly fixed from and after which it shall be in force; and also to any day or event which is named in a statute or contract as the *terminus a quo* a calculation of time is to be made. And so variant are the decisions in England and this country, and so unsettled is the question, that we are at liberty to settle it in this State upon such principles of construction as would be deemed useful and consistent. In computing a person's age, the day of his birth is always included; because, there being no fraction of a day, it must be accounted as one of the days of his life. But the day on which a writ is served is not computed as one of the fourteen, or thirty, in case of court writs, nor one of the seven, in case of justices' writs. In these instances, by excluding the day of service, the day on which the writ is returnable is computed; and there being in such cases no fraction of a day, the whoe of that day is computed; and thus the term of fourteen, thirty and seven days, is complete. According to some cases, where the computation is from an act done, the day on which it is done is to be included: otherwise, when " from the day of the date." *The King v. Adderly, Dougl.* 463. *Castle v. Burditt* 3 *D. & E.* 623, 624. 1 *Ld. Raym.* 650. *Clayton's case* 5 *Co.* 1. *Cro. Jac.* 135. *Salk.* 625, 658. So when goods are to be kept five days, the day of taking is to be counted as one. 1 *H. Bl.* 14. But the day of the date is excluded in writs of protection, and in

the enrolment of deeds within six months. *Norris v. Gawtry* *Hob.* 139. *Dyer* 218. In putting in bail, when judgment is on Monday, four days include all Friday. 4 *D. & E.* 121. But if on Monday a party has four days to plead in abatement, he must plead by Thursday night. 3 *D. & E.* 642. Again if a robbery is committed *October* 9, the year will end *October* 8, for the day of the robbery is part of the year. *Norris v. Gawtry, supra.* With us, the day on which an execution issues is excluded, in computing the three months, within which it is made returnable; thus if it is dated *January* 1, it is returnable *April* 1. And in estimating the four days, during which an officer is to keep goods seized on execution, the day of seizure is excluded. In *Brown v. Maine Bank* 11 *Mass.* 153, the day on which judgment is rendered is excluded in computing the thirty days during which an attachment of property is continued in force. But it is not necessary in the decision of this cause to cover so broad a ground, as we probably might, for the reasons we have above assigned. Estoppels are by no means the favorites of the law, as they tend to exclude the truth of the case; and we are therefore not inclined to create and give effect to one by construction. The legislature must have intended that the town notified should have two whole months in which to answer such notice; but on the plaintiffs' construction, if the notice had been given to *China* at eleven o'clock on the evening of *October* 20, the defendants would not have had two months, unless an answer on the 20th of *December*, can be considered as seasonable. If we go no further, we ought, at least, in order to avoid the effect of an estoppel, or save a forfeiture, to give a liberal construction; and such we are disposed to give in the case before us. We perceive that the Supreme Judicial Court of Massachusetts have adopted a similar principle, in *Bigelow v. Wilson* 1 *Pick.* 485, in which case the court took a view of the contradictory decisions on the subject, and decided that the day on which a deed of an equity of redemption was executed by the officer who sold it, was to be excluded, in computing the year within which it was by law redeemable. The language of the statute in that case, as to the right of redemption, is similar to that used in the statute of 1821;

in the former case it is " within one year from the time of giving such deed;" and in the latter case " within two months," &c. as before stated. This is a case directly in point ; and it seems to us to rest on a solid foundation. A similar construction was adopted by the Supreme Court in Pennsylvania in the case of *Sims v Hampton* 1 *Serg. & Rawl.* 411. The words of the statute on which the question arose are,—" shall enter such appeal with the prothonotary of the proper county within twenty days after the entry of the award of the arbitrators on his docket." The court decided that in computing the twenty days ; the day on which such entry was made should be excluded ; observing that the party dissatisfied should be allowed the full period of twenty days. Respecting the second point, there can be no question as to the correctness of the instructions, under which the presiding judge submitted all the facts in relation to it to the determination of the jury. It was a mere matter of evidence, and exclusively within their province, whether supplies had been furnished by the town of *China* to the pauper, as such, within one year next before the 21st of *March* 1821, so as to bring the case of the pauper within the exception in the statute ; and this point the jury have settled in favor of *China.* We perceive no ground for a new trial, and there must be

*Judgment on the verdict.*