THE NATIONAL MUTUAL FIRE INSURANCE COMPANY v. HIRAM S. BARNES *et al.*

1. FIRE INSURANCE — *Agent — Company, When Bound.* An agent of a mutual insurance company, authorized to issue policies of insurance and consummate the contract, binds the company by any act, agreement, waiver, or representation within the ordinary scope and limit of insurance business, which is not known by the assured to be outside the authority granted to the agent.

2. POLICY — *Waiver of Stipulation.* An agent of a mutual insurance company, authorized to issue a policy of insurance and consummate the contract, and who is informed by the applicant that a part of the property is on the right-of-way of a railroad company, and with his own hand fills in the blanks in the application for a policy, and with knowledge of the condition of the property, writes "Yes" as an answer to the question, "Do you own the land in fee simple?" thereby waives for the company the stipulation in the policy, that it shall be void if any misrepresentation be made as to the title or condition of the property.

*Error from Ottawa District Court.*

ACTION to recover upon an insurance policy. Judgment for *Barnes & Bush*, for $945.35, at the May term, 1887. The defendant company brings the case here. The opinion states the facts.

*Chas. A. Hiller*, for plaintiff in error.

*R. F. Thompson*, for defendants in error.

Opinion by SIMPSON, C.: Action to recover on an insurance policy of $1,000, on a steam elevator at Bennington, Ottawa

county, commenced in the district court of that county on the 15th day of March, 1887. The company resisted payment upon the ground of a false representation and warranty of title of the land, which was in part a portion of the right-of-way of a railroad company. The reply alleged that the agents of the company, Simmons & Cole, had known the exact condition of the title, and filled up the blanks, and wrote the application, except the signature. The case was tried by the court, and special findings of fact were made, and judgment rendered for the plaintiffs below. The court found in addition to the facts admitted, the following:

"During the whole of the month of September, 1886, W. B. Simmons and W. L. Cole, partners under the firm-name of Simmons & Cole, were the duly-authorized agents of the defendant at Bennington, Kansas, for the purpose of taking applications and issuing policies of insurance for the defendant, and as such agents they had full authority to take the written application mentioned in the defendant's answer herein, and to issue the policy of insurance set forth in the plaintiff's petition herein. The said application was taken by said agents for the said defendant on the 20th day of September, 1886, and was written and prepared entirely by them, except the signature of the plaintiffs thereto, and at the time said application was being so written and prepared and in answer to the questions therein contained, said plaintiff gave to said agents a full and correct account and statement of the title to the land upon which said elevator stood, and fully and correctly informed said agents that a part of said elevator stood on land leased from the Solomon Railroad Company, being a part of its right-of-way; and that at the time said application was so made, and before the same was signed by the plaintiffs, said agents had full knowledge of all the facts concerning the titles to the land upon which said elevator was located. In consideration for the issuance of said policy, and at its date, the said plaintiffs paid to the said defendant the sum of $35, and then executed and delivered to said defendant their promissory note for $175, payable by installments to said defendant at any time or times as the board of directors of said defendant might order. The said plaintiffs were the owners of the property described in said policy of insurance at the time of its insurance, and at the time said

property was destroyed by fire.   On the 5th day of November, 1886, the property described in said policy of insurance was totally destroyed by fire.   On the 22d day of December, 1886, the said plaintiffs furnished the defendants with proof of said loss, and have otherwise performed all the conditions of said policy on their part.   At the time said application was taken and said policy was issued, the property therein insured by the defendant was also insured in another company for the sum of $2,000, which fact was fully set forth in said application.   The property described in said policy and insured thereby was at the time of its destruction by fire as aforesaid of the value of $2,783.32, and the amount and value of the loss under said policy was $931.06, which defendant should pay to plaintiffs."

The assignments of error are, that the findings are not supported by sufficient evidence; that they do not authorize the conclusions of law; that improper testimony was admitted; and that the motion for a new trial was improperly overruled. All the findings of fact are supported by the evidence; that of the agency of Simmons & Cole is clearly established; their knowledge that a part of the elevator was situated on the right-of-way of the railroad company is sufficiently established; and the weight of the evidence considered in connection with all the circumstances is, that the insured answered the controlling question in the affirmative, by the advice of the agents of the company.   They wrote the application, filled in all the blanks, and all the insured did was to write the signature.

The pivotal question under this state of facts is, whether or not the insurance company is not estopped from denying the truth of the statement contained in the application concerning the title to the property.   The leading case in this state upon this question is that of *American Cent. Ins. Co. v. McLanathan*, 11 Kas. 533, and in this particular feature is very similar to the one we are considering.   There the agent knew that the title to the lots was in the wife of the applicant, but said it did not make any difference.   Here the agents knew that a part of the elevator was on the ground of the railroad company, but advised the applicant to answer that he was the

owner, and themselves wrote the answer. The case cited holds, "That an agent of an insurance company authorized to issue policies and consummate the contract, binds his principal by any act, agreement, representation or waiver within the ordinary scope and limit of insurance business, which is not known by the assured to be outside the authority granted to the agent." This declaration of the law has been approved by this court in the following cases: *Sullivan v. Phenix Ins. Co.*, 34 Kas. 170; *Continental Ins. Co. v. Pearce*, 39 id. 396.

It is said by the court in *Sullivan v. Phenix Ins. Co.*, that the current of judicial authority in this country is in favor of this declaration. Applying this principle to the facts found, there can be no other legal conclusion than that the company is liable on the policy for the loss.

The learned counsel for the plaintiff in error makes a vigorous and ingenious argument, trying to show that this principle is not applicable in this case because the plaintiff in error is a mutual insurance company organized under chapter 132, laws of 1885. He claims that as under this law each policyholder becomes a member of the company, he is thereby charged with notice of its by-laws and policies, which must be approved in form, by the attorney general of the state, and that each member also must be held to have had knowledge of the extent of the power of every agent. This may all be true, and yet not vary the rule announced. The counsel would not certainly claim that the mere act of application for a policy would make the applicant a member of the company. If he is made a member, it is not until a policy is issued and delivered to him. He is claiming in this case, that the act of the applicant in misrepresenting the condition of the property avoids the policy. He claims he is a member, because he has a policy, and yet that the policy is void. He cannot be permitted to blow hot and cold in this manner. So far as the question we are considering is concerned, it is not affected in any way by his action as a member of the mutual company, if he has become one. The main strength of his argument, however, is derived from those provisions of

the law of 1885 which seem to contemplate that the policies must issue from the home office. This is not an express requirement, but is inferentially true, because the law provides that the directors shall determine the rate and the amount of the premium note, and the part of the premium to be paid in cash. It further declares that no policy shall exceed $3,000 in amount, and in no case shall it exceed ten per cent. of the value of all premium notes in force. It also provides that the note, application, by-laws and regulations shall be copied on the policy, and shall become a part of the contract. This was not done with reference to this policy. From all these requirements, it is suggested that the policy must be issued by the home office, for the reason that the agents could not possess the necessary knowledge with reference to all these restrictions. We are left without any knowledge as to whether or not this policy has been issued in violation of any of these requirements; and in the absence of any evidence on that subject, we are bound to presume that everything connected with the issuance of this policy has been done in accordance with the laws creating the company, and its own regulations. We must presume that only a limited number of policies signed and ready for delivery was in the hands of the agents, with instructions conforming to the legal requirements; in other words, on the state of facts presented, we cannot permit the insurance company to say that this policy has not been issued in accordance with the law regulating their conduct in these matters. No such a defense would be listened to for a moment, unless it appeared that the assured had knowledge of and participated in the violation of the law. We think the reason for the rule is stronger when applied to a resident incorporated insurance company, than to one operating from some other state. This company has its principal office in Salina, this risk was taken by agents in a neighboring county, and the policy was issued and delivered within a few hours after the application was first made; and yet, under these circumstances, when the company has intrusted its agents in this locality with the power of issuing policies, they being located

within a few miles of the home office, we are met by the contention that the policy must issue from the home office. If this claim is made in good faith it ought to be accompanied by some explanation why these policies, all signed and ready for delivery, were in the hands of the agents at Bennington.

There is no reversible error. We recommend an affirmance of the judgment.

By the Court: It is so ordered.

All the Justices concurring.