# SOUTHERN DEPARTMENT—EASTERN DIVISION.
## JUNE TERM, 1895.

THE DWELLING-HOUSE INSURANCE COMPANY, OF BOSTON, MASS., v. ROBERT OSBORN.

1. INSURANCE—*Action on Policy—Limitation.*  The general rule is that, in the computation of time from an act done, the day on which the act is done will be excluded whenever such exclusion will save a forfeiture.  Following this general rule, *held*, where a loss occurs September 15, 1889, under a policy of insurance containing a clause limiting the time within which an action may be maintained to six months "after loss or damage shall occur," and an action is commenced March 15, 1890, upon said policy, said action can be maintained.

2. OCCUPATION OF PREMISES—*Homestead—Deed of Assignment.*  Where a resident of this state, who is the head of a family, owns two houses located upon a lot and one-half of ground, containing less than one acre, within the limits of a city, and occupies one of the houses, with his family, for living and sleeping purposes, and the other for cooking and kitchen work, and also cultivates the grounds for his family, at the time he joins in a deed of assignment with a partner for the benefit of the creditors of said firm, *held*, that both of said houses constitute a part of the homestead of the debtor and his family, and no part of said premises is transferred to the assignee under said deed of assignment.

3. PREMISES, *Not Vacant or Unoccupied.*  Where a house, built for dwelling purposes, is used by the owner thereof for cooking and general work in connection with an adjacent house where said owner and his family lodge and eat, such house, so used for cooking and general purposes, is not "vacant or unoccupied" within the meaning of a clause in an insurance policy which provides that said policy shall become void if the house become "vacant or unoccupied."

4. PROOFS OF LOSS—*Waiver.*  The denial of liability by a general adjuster sent by an insurance company to investigate losses under two policies issued by said company is the denial of the company, and waives the filing of proofs of loss.

MEMORANDUM.—Error from Bourbon district court; S. H. ALLEN, judge.   Action on a policy of insurance by Robert Osborn against the Dwelling-House Insurance Company, of Boston, Mass.   Plaintiff had judgment, and the defendant brings the case to this court. Affirmed.   The opinion, filed July 16, 1895, contains a sufficient statement of the facts.

*J. D. McCleverty*, for plaintiff in error.
*J. D. Hill*, for defendant in error.

The opinion of the court was delivered by

COLE, J. :  This is an action brought in the district court of Bourbon county upon a policy of insurance issued by the plaintiff in error to Robert Osborn upon a dwelling-house located in Fort Scott.   From a judgment in favor of Osborn in the district court the insurance company brings the case here.   The material facts are that in December, 1886, the Dwelling-House Insurance Company, of Boston, Mass., through its resident agent at Fort Scott, issued to Robert Osborn three policies of insurance.   One of these policies does not enter into this case.   Of the two policies which are connected with the matter in dispute, one covered a dwelling-house occupied permanently by Osborn and his family, and the other, being the one upon which this suit is based, included a house built in part upon the same and in part upon the adjoining lot to the first-named house, and also a barn located upon the premises.   The house covered by the policy in suit was leased by Osborn a part of the time, and when not rented a part of its rooms were occupied by Osborn and his family as a kitchen.   The outbuildings upon the two lots were used in common when

the houses were occupied by separate families, and Osborn reserved and cultivated the rear portion of both lots for a garden. About June 15, 1889, the house covered by the policy in suit became vacant, and Osborn at once moved his kitchen stove and other kitchen furniture into it. He also had some flour in the pantry, and some bedclothes in one of the closets. He began using that portion of the house indicated, and so continued to use said rooms until the morning of September 15, 1889, when the house was totally destroyed by a fire, which also slightly damaged the house covered by the other policy.

It is admitted that the insurance company was properly notified of the loss. Then one Ira Smith, representing the company, visited Fort Scott, adjusted the loss upon the damaged building, and declined to adjust the loss under the policy in suit. No proofs of loss were filed by Osborn for the house which was totally destroyed. It further appears that on July 5, 1889, the firm of Jones & Osborn, the latter being plaintiff below, made a statutory assignment for the benefit of their creditors. The petition and præcipe in this case were filed in the office of the clerk of the district court of Bourbon county, and a summons was issued by him and mailed to the superintendent of insurance on March 15, 1890. A number of errors are assigned by the insurance company as grounds for reversal of the judgment of the trial court.

The first question which claims our attention is whether this action was commenced in time. The policy in suit contained the following clauses bearing upon the question :

"It is mutually agreed that no suit or action against this company upon this policy shall be sustainable in any court of law or equity unless commenced within

six months after the loss or damage shall occur ; and, if any suit or action shall be commenced after the expiration of said six months, the lapse of time shall be taken and deemed as conclusive evidence against the validity of such claim, any statute of limitation to the contrary notwithstanding.''

''The amount of loss or damage to be estimated according to the actual cash value of the property at the time of the loss, and to be paid 60 days after notice and due and satisfactory proofs shall have been made by the assured and received at the company's home office at Boston, Mass., in accordance with the terms and provisions of this policy hereinafter named.''

The plaintiff in error contends that, as the loss or damage occurred on September 15, 1889, in order for the action to be maintained upon the policy in suit, such action must have been commenced by the 14th day of March, 1890 ; in other words, that, in the computation of time, the day of loss must be included. And plaintiff in error further contends that this action was not legally commenced until the date of delivery of the summons to a proper officer for service, and argues that in the case at bar this was on the 17th of March, 1890, the date when the summons was received by the superintendent of insurance ; and that, even if the action was commenced by filing petition and præcipe and the issuance of the summons, still, the 15th of March was one day too late.   The defendant in error contends that the period of limitation should commence at the expiration of 60 days after the notice of loss, within which period an action could not be maintained upon the policy, and that in the computation of time the day of the loss should be excluded.   It seems to be admitted, and is certainly well settled in this state, that a provision in an insurance policy limiting the time within which an action may be maintained is binding upon the parties and has the

effect of abrogating the statutes of limitation of this state. The first question, then, is, What constitutes the commencement of a civil action in this state? Paragraph 4136 of the General Statutes of 1889 reads as follows : "A civil action may be commenced in a court of record by filing in the office of the clerk of the proper court a petition, and causing a summons to be issued thereon." Under this paragraph, when the plaintiff filed his petition in the office of the clerk of the district court of Bourbon county, and caused a summons to be issued thereon on the 15th day of March, 1890, his action was commenced. Was the action commenced in time? The position of the defendant in error that the period of limitation commences at the expiration of the 60 days designated in the policy within which notice and proofs of loss are to be given and filed, is not well taken. In the case of *McElroy v. Insurance Co.*, 48 Kas. 200, the supreme court, in an opinion prepared by Mr. Commissioner SIMPSON, says : "There is some contention in the brief of the plaintiff in error, although none at the bar, that, as this policy gave the assured 60 days within which to make proofs of loss, this time of 60 days must be deducted from the 12 months prescribed by the agreement ; but the weight of the well-considered cases is against such a construction." The same doctrine is affirmed in *Insurance Co. v. Stoffels*, 48 Kas. 205. This brings us to the question as to what rule is to be adopted in the computation of time under a policy containing a clause like the one in suit. Does the six months "after the loss or damage shall occur" include the day upon which such loss or damage occurred, or, in the computation of time, is a rule similar to the one contained in § 722 of our code to be adopted, and the day

upon which such loss or damage shall occur to be excluded? The learned counsel for the plaintiff in error argues that as the court held in *McElroy v. Insurance Co.* and *Insurance Co. v. Stoffels*, supra, that a claim in an insurance policy limiting the time for the commencement of an action abrogates the limitation of our code as to time, then it would seem that the rule of our statute as to computation of time would not apply. Admitting the force of the argument, we would then be relegated to the general or common-law rule for the computation of time. Our supreme court has in different cases applied the two opposite rules in the computation of time, some of which cases are cited in the briefs of counsel. An examination of all these cases, as well as numerous authorities from other states, leads us to the conclusion that, while perhaps in a majority of cases where time is to be computed from some event or act done the day within which the event transpired or the act was done is included, yet in a large number of such cases the day of the transpiring of the event or of the doing of the act is excluded in the computation ; and we think this is the general rule whenever such exclusion will prevent an estoppel or save a forfeiture.

In *Bigelow v. Wilson*, 1 Pick. 487, under a statute which allowed the redemption of an equitable estate sold on execution within one year next after the time of executing by the officer to the purchaser of the deed thereof, it was held that, in computing the year allowed for the redemption, the date on which the deed was executed should be excluded ; and in *Kimm v. Osgood*, 19 Mo. 60, where letters of administration were granted January 12, 1852, a demand exhibited January 12, 1853, was held within one year after the granting of the letters. In that case the court says :

'' We state the rule then to be that in the computation of a period of time for an act done the day on which the act is done is to be excluded.''

In *Sands v. Lyon*, 18 Conn. 18, the same doctrine is held, and, in the opinion of the court, the following language is used (at page 28): ''That instruments shall be so construed, if possible, as that they and the rights depending upon them shall be upheld, not destroyed, the presumption being that instruments are designed to be effectual and not futile.''

In *Carothers v. Wheeler*, 1 Ore. 196, where a statute required an appeal to be taken from the board of commissioners to the district court within 20 days after a decision by said board, the court says : ''For we hold upon authority, as well as in accordance with the rule laid down in our statute, that the time within which an act is to be done shall be computed by excluding the first day and including the last, and if the last be Sunday, it shall be excluded.''

In 1 Wood on Limitation of Actions ( 2d ed.), p. 122, after citing the different authorities in which the rule is laid down as above stated, that author says : ''And this rule is applied to all species of contracts, bills of exchange, promissory notes, policies of insurance, wills, and other instruments. And they are to be so understood that the day of the date or the day of the act from which a future time is to be ascertained is to be excluded from the computation.''

The same doctrine is held in *Menges v. Frick*, 73 Pa. St. 137 ; *The State, ex rel., v. Gasconade Co. Ct.*, 33 Mo. 102 ; *Windsor v. Inhabitants of China*, 4 Me. 298. We are satisfied that this doctrine is also in harmony with the case cited by the counsel for plaintiff in error decided by our supreme court, viz. : *English v. Williamson*, 34 Kas. 212. And this rule ought especially

to apply in a case like the one at bar, where the time within which an action may be maintained is practically limited to four months.

The next question for consideration is, Did the deed of assignment made by Jones & Osborn on July 5, 1889, convey the property destroyed to the assignee named therein? This depends wholly upon whether or not the property destroyed was exempt as the homestead of Osborn, for if it was the title did not pass to the assignee for the benefit of the creditors of Jones & Osborn. If it were not a part of Osborn's homestead, then the title passed to the assignee, and the policy was void under the clause contained therein, viz. :

" That if the property, or any part thereof, shall be sold or conveyed, or if the interest of the assured in said property, or any part thereof, now is or shall become any other or less than a perfect, legal, and equitable title and ownership, then, and in every such case, the policy shall become absolutely void."

It is conceded that at the date the policy was issued Osborn had a clear title to the premises covered by the policy, and that the only act if any which had deprived him of the title was the assignment of Jones & Osborn above referred to. The correct rule to apply in such a case is, What was the situation at the time of the assignment? If the use and occupancy of the premises covered by the policy in dispute were such at that time as to bring the house in question within the exemption allowed by the statute, it does not matter whether or not they were exempt at some prior period. As above stated, the house destroyed and covered by the policy in suit was located upon the boundary line of two lots. Both the house destroyed and the one damaged were upon a lot and a

half of ground in the city of Fort Scott, containing less than one acre. On July 5, 1889, Osborn was occupying one house for living and sleeping purposes, and one for cooking purposes. He had the kitchen stove, tables and other articles belonging to that part of the household in the house destroyed, and had used that house for kitchen purposes continuously since June 13 or 14. The outbuildings were always used in common, even when he had a tenant in one of the houses, and the rear part of the yard was always reserved by him for a garden. There can be no doubt, under such circumstances, that the whole of said property was the homestead of Osborn, and as such did not pass by the deed of assignment. In *Layson v. Grange*, 48 Kas. 440, it was held that when a debtor owns a house and three lots, containing less than one acre within the limits of a city, upon which he resides with his family, and also has a carpenter shop which he afterward converted into rooms which he rented to a family, but did not lease the ground, and reserved the basement of such building for his own use as well as the lot upon which the building is situated, the property was a homestead, and exempt from forced sale on execution. In that case the premises claimed as not being a part of the homestead were, at the time an execution was levied upon them, actually rented to and occupied by a tenant, and were entirely separate from the house occupied by the debtor and his family as a residence, while in this case, at the time of the execution of the deed of assignment and at the time of the fire, the building claimed as not a part of the homestead was being actually occupied by Osborn and his family.

Counsel for plaintiff in error relies upon *Ashton v. Ingle*, 20 Kas. 670, as an authority supporting his

position that the house destroyed passed by the deed of assignment. In that case the portion of the property levied upon was being actually occupied by several tenants, excepting such occupancy as was gained after judgment by the debtor, and as the court says was for the purpose of defeating any levy of execution. But the court in that case lays down the rule that the *status* of the property at the time of judgment was what governed. Applying that rule to the case at bar, the governing *status* would be that which existed at the time Osborn made the deed of assignment.

The foregoing facts stated and views expressed also answer the third question, Was this house vacant within the meaning of the policy? in the negative. The house was being used for dwelling-house purposes, and was being occupied each day; it was neither vacant nor unoccupied under the authorities. In *Shackelton v. Sun Fire Office*, 55 Mich. 288, the house was occupied by a tenant who vacated it on June 19, 1883. The owner took possession, put her furniture in the building, but she did not take her meals or lodge in the house, which was destroyed by fire July 4. It was held that the house was not vacant or unoccupied within the meaning of the contract.

In *McQueeny v. Insurance Co.*, 52 Ark. 257, a policy of insurance covered two houses about 30 feet apart and in the same inclosure, one being occupied by the insured, and the other to let at the time of the fire. The insurance was for separate sums on each house, but the premium was paid in gross. Both houses were destroyed when the dwelling-house alone was occupied. It was held that the contract was indivisible, and the premises not vacant within the meaning of the policy so as to discharge the company from liability for loss of the house that was to let.

And in *Insurance Co. v. Storig*, 137 Ill. 646, the jury made a special finding to the effect that the insured building was situated in the rear of one in which the owner lived, and was occupied permanently by him for washing, ironing, cooking, eating, and storage, which was held not inconsistent with a general finding that it was occupied as a dwelling-house. What is meant by the phrase "vacant and unoccupied" in a policy of insurance is a question of law, but whether the building was at the time of the loss "vacant and unoccupied" within the meaning of the policy is a question of fact. In this case the trial court clearly defined the meaning of the phrase "vacant and unoccupied," and the jury by their general verdict said that the building in question was occupied as contemplated by the policy, and there was sufficient evidence to sustain this finding.

The fourth question is, Were proofs of loss waived? It must be conceded that, as Osborn failed to make proofs of loss, unless they were waived, he cannot recover upon the policy. The evidence in this case shows that the plaintiff in error was a non-resident company, and that at the time of the loss under this policy there was no resident agent at Fort Scott. Osborn sent a notification of loss to the company, at its home office in Boston, and in response thereto and in about 10 days, one Ira Smith came to Fort Scott for the insurance company. He adjusted the loss with Osborn under the policy covering the house that was damaged, and the amount that was agreed upon was remitted to Osborn from the home office. Smith testified that he had been in the employ of the insurance company about two years, and had during that time adjusted 200 losses, and that the company relied upon his judgment in respect to the manage-

ment of those losses. Smith was to all intents and purposes the company, so far as the adjustment was concerned, and under the decisions of our supreme court in *Insurance Co. v. Gray*, 43 Kas. 497, and *Insurance Co. v. Munger*, 49 id. 178, and the authorities there cited, his acts and statements in regard to such loss and adjudgment were properly received in evidence, and were binding upon the company. The evidence is somewhat conflicting as to what some of these acts and statements were. Osborn testified that Smith told him he need not make proofs of loss, that the building was unoccupied and that the company was not liable for the loss; and in this statement he is in part corroborated by the witness, Leonard. Smith testified that he told Osborn he could not do anything for him on account of the building being vacant. The jury were justified under this evidence in finding that proofs of loss were waived. The rule that the denial of liability on the part of the company waives proof of loss is too well settled to require a citation of authorities.

The judgment of the lower court is affirmed.

All the Judges concurring.