THE MILWAUKEE MECHANICS' INSURANCE COMPANY v. THOMAS BROWN.

No. 46.

1. INSURANCE COMPANY—*Authority of Agent.*  An agent of an insurance company, authorized to issue policies of insurance and consummate the contract, binds the company by any act, agreement, waiver or representation within the ordinary scope of insurance business, which is not known by the assured to be outside the authority granted to the agent. (*Insurance Co. v. Barnes,* 41 Kan. 161.)

2. ——— *Knowledge of Agent—Oral Evidence.*  Where a material-man contracts with two parties, one of whom has the legal

15—KAN. APP.

title to a certain lot, and the other a contract from said holder of the legal title to furnish the material for erecting a house upon said lot, and said material-man, desiring a contractor's insurance on the building, goes with the agent of the owner of the legal title to an insurance agency and makes application for such insurance, and the agent of the insurance company, with a full knowledge of all the facts, issues a policy in the name of the person holding the contract and inserts therein a clause making the loss, if any, payable to such material-man as his interest shall appear, and the intention is to indemnify the material-man against loss by fire on such building, *held*, that such a policy may be enforced for the benefit of the material-man; *held*, also, that to explain and give effect to such policy, oral testimony may be resorted to.

3. —— *Waiver by Agent—Duty of Company.* If an insurance agent, knowing that premises sought to be insured are unoccupied, issues a policy of insurance thereon, using the form containing a clause which declares that the policy shall become void in case the premises be or become vacant and unoccupied and so remain for 10 days, and if he fails to strike out such clause, the fault being that of the agent and not of the insured, it operates as a waiver of such conditions on the part of the company, and it will be liable in case of a loss. *Held*, further, that if, in negotiations between the agent and the assured, no time was definitely fixed within which the premises should be occupied, the policy would continue valid until the company or its agent notified the assured that it elected to cancel the policy and refund the premium.

4. —— *Proofs of Loss.* Where a loss occurs under a policy issued under circumstances as above set forth, the material-man is the proper person to make proofs of loss.

5. MECHANIC'S LIEN—*Partnership Claim.* Where one member of a firm purchases the interest of the balance of the firm, he obtains by succession all the rights of said firm under a lien which has accrued to the firm for lumber and material furnished in the erection of a dwelling-house.

6. —— *Assignable.* The lien of a mechanic or material-man is assignable under the laws of this state.

MEMORANDUM.—Error from Bourbon district court; S. H. ALLEN, judge. Action by Thomas Brown against The Milwaukee Mechanics' Insurance Company to recover on a policy of fire insurance. Judg-

ment for plaintiff.   Defendant brings the case to this
court.   Affirmed.   The opinion herein, filed February
5, 1896, states the material facts.

*W. C. Perry,* and *Fyke, Yates & Fyke,* for plaintiff in
error.

*Dillard & Padgett,* for defendant in error.

The opinion of the court was delivered by

COLE, J. :  Thomas Brown brought his action in the
district court of Bourbon county against the Milwau-
kee Mechanics' Insurance Company upon a certain
policy of insurance issued by said company.   From a
verdict and judgment in favor of plaintiff below the
insurance company brings the case here for review,
The facts in brief in this case are, that on January 1,
1890, one Hepler owned a certain lot in the city of
Fort Scott, for the sale of which he made a written
contract with Mrs. Gilliatt, who was to proceed to con-
struct a house upon the premises, make a loan there-
on, and pay the purchase price of the lot from the
proceeds of the loan.   Mrs. Gilliatt contracted with
Wines & Tibbs to build the house, and also, in connec-
tion with J. D. Hill, who was the agent of Hepler,
made a contract with S. A. Brown & Co. for the lum-
ber to be used in the construction of the house, and
such lumber and building material were furnished by
said firm and used in the building of the house to the
amount of $545.46, between January 1, and March
20, 1890.   On March 22, 1890, plaintiff in error,
through its resident agent, L. A. Warfield, issued the
policy of insurance in question, which recited that
the said company insured E. J. Gilliatt in the sum of
$1,200 for loss occurring by fire on the two-story dwell-
ing-house situated on the premises which are above

described. There was indorsed on the face of the policy the clause, "Loss, if any, payable to Thomas Brown, as his interest may appear." Within the time prescribed by statute, Thomas Brown, for S. A. Brown & Co., filed a mechanic's lien to secure the payment of the amount due for lumber and building material. On June 1, 1890, Thomas Brown purchased the interest of the other members of the firm of S. A. Brown & Co., and from that time became and was the owner thereof. After the issuance of the policy in suit, and about the last of March or the first of April, Wines & Tibbs, in company with Brown, called upon Warfield for the purpose of having the amount due to them secured by the policy of insurance, and shortly afterwards they assigned their claim to Brown, but without consideration, excepting that at the date of said assignment they were indebted to Brown in the sum of $34.70. The house covered by the policy in question was at the time said policy was issued incomplete and unoccupied, and remained unoccupied up to the date of September 13, 1890, when it was practically destroyed by fire. Upon the morning after the fire, Brown notified one Smith, who had succeeded Warfield as the resident agent of the company at Fort Scott, of the loss, and received a reply to the effect that he would notify the company. Soon after, Smith sent for Brown, requesting him to come to his office to meet one F. S. Long, special agent or adjuster of the defendant company, and, after some conversation, it seems to have been agreed that both Mr. Long and Mr. Brown should write the company concerning the loss. Soon after writing the company, Brown received a reply, in which he was referred to Mr. Long as the one who had charge of the matter concerning which he had written the company. Proofs

of loss were filed within the proper time by Brown, and no other proofs of loss were filed by any person under such policy.

A number of errors are alleged, but all relate to certain general. questions which were the subject of contention in the trial of the case.    It appears to us that the question in dispute may be easiest settled by first arriving at a solution of the situation of the parties to this action at the time the policy in question was issued, what part each took in making the contract of insurance, if one was made, and what was the evident intention of the parties to the contract as shown by the policy, and, if permissible by evidence in the record, outside said policy.

Plaintiff in error was a nonresident, having its general offices at Milwaukee, Wis., and represented in Fort Scott by L. A. Warfield, who had been authorized by said company to issue policies which were placed in his possession by the company already signed by the president and secretary.    The plaintiff was a material-man, and the evidence shows that he came into the office of the resident agent with the agent of the owner of the légal title of the land and expressed a desire to take out a policy of insurance upon the property which was afterward destroyed, to secure himself against loss on account of having furnished lumber and building material used in the construction of said house.    The evidence fully supports the contention of plaintiff below, that it was then and there fully explained to the agent of the insurance company that the legal title to the property upon which insurance was desired was in Hepler, who was represented by Hill, and that Mrs. Gilliatt had simply a contract of purchase from Hepler.    It is further fully

shown by the evidence that the agent of the insurance company was informed of the fact that the house was then in the process of construction and unoccupied. It further appears from the evidence that Brown desired the insurance taken in his name, and that the policy was written in the form in which it appears at the suggestion of the agent of the insurance company, and with knowledge upon his part of all the above facts.

The insurance company now contends: (1) That their agent, Warfield, had no general authority, and that, as the policy contained a clause to the effect that, if the interest of the insured was less than a full and complete ownership, the policy should become void, and a further clause to the effect that no conditions of the policy should be waived unless such waiver should be written upon the face of the policy, or attached thereto, and that therefore, under the facts in the case, the plaintiff below cannot recover; (2) that proofs of loss under the conditions of said policy must necessarily be made by E. J. Gilliatt, who was named in the policy as the insured, or else the company could not be held liable; and (3) that the house having remained vacant for more than 10 days, the policy was void under the conditions thereof.

It is a general rule, which needs no citation of authorities to support it, that a principal is bound by the acts of an agent within the scope of his authority, and in this state it has been settled by numerous decisions. "An agent of an insurance company, authorized to issue policies and to consummate the contract, binds his principal by any act, agreement, representation or waiver within the ordinary scope and limit of insurance business, which is not known by the assured

to be outside the authority granted to the agent.''
(*American Central Ins. Co. v. McLanathan*, 11 Kan.
533.) See, also, *National M. F. Ins. Co. v. Barnes*, 41
Kan. 161; *Western Home Ins. Co. v. Hogue*, id. 524;
*Dwelling-House Ins. Co. v. Osborn*, 1 Kan. App. 197.

It is also a general rule that the knowledge of the
agent is the knowledge of the principal, and in this
case, as Warfield, the resident agent of the insurance
company, was an agent who was authorized to issue
policies for the plaintiff in error, any knowledge which
came to Warfield must be presumed to have been the
knowledge of the company; and, as Warfield issued
the policy in question with knowledge of the facts
that the title of Mrs. Gilliatt was incomplete and the
premises unoccupied, the company must be deemed,
through Warfield, to have waived the conditions of
the policy in conflict with such a state of facts, and
cannot now be heard to defend upon the ground that
such conditions have not been complied with. In the
the case of *Insurance Co. v. McLanathan*, supra, the
agent knew that the title of the land was not in the
party making the application, but said it did not
make any difference. In *Insurance Co. v. Barnes*,
supra, the agent knew that a part of the elevator
to be insured was upon the ground of the railroad
company, but advised the applicant to answer that
he was the owner. In this case the agent knew that
Hepler had the legal title to the land and that Brown
was simply endeavoring to secure himself for material
and wrote the policy in the form in which it appears.
There can be no doubt the company is bound in one
case the same as in the other.

The facts in this case are very similar to those in
the case of *Devine v. The Home Ins. Co.*, 32 Wis. 471.
In that case, Dixon, C. J., in delivering the opinion

of the court, made use of the following language, which is applicable to this case :

"The policy is of a form undoubtedly designed to be issued only when the buildings and property insured are situated upon premises which are occupied. Unoccupied premises, or buildings and property situate thereon and themselves unoccupied, would obviously require some different form of policy for their insurance against loss or destruction by fire.   Either the condition with respect to the premises becoming vacant or unoccupied, and so remaining for the period of more than 30 days without notice to and consent of the company in writing, would need to be stricken out, or the written consent of the company would be requisite at the time the policy issued.   But notwithstanding this is so, still it does not follow, because a policy in the first form was made out and delivered when the last form should have been adopted, that it is void in the hands of the insured.   If the mistake was that of the agent of the company issuing the policy, or the fault, if any, his, and not that of the insured, the policy will nevertheless be valid, and the company bound to answer for the loss.   .   .   .   If the agent who issued the policy knew that the premises were unoccupied, if he was so informed by the assured at the time, then it was his mistake or fault that the terms or conditions of the policy did not conform to the facts of the case or application presented, as he knew those facts to be.   If, notwithstanding such knowledge, he issued the policy in form as shown, it was a waiver on his part, and through him on part of the company, of any written or printed condition contained in the policy respecting the occupation of the premises, and which would otherwise have gone to avoid the contract or release the company from liability."

Again, the court did not commit error in admitting oral testimony as to the conversation which took place at the time the policy was issued between Warfield, Hill, and Brown.   It was proper to show the true in-

tention of the parties.   Where such intention was not declared by the face of the policy it was proper to permit oral evidence, not for the purpose of contradicting the written instrument, or of changing the contract of the parties, but for the purpose of learning what the oral contract of the parties was, and for the purpose of making clear the contract.   (*Insurance Co. v. Thompson*, 43 Kan. 567.)

In this case E. J. Gilliat had nothing whatever to do with procuring the insurance, nor was it procured primarily for her benefit, and all the facts were well known to the agent issuing the policy.   As a matter of fact, the policy was really issued for the purpose of protecting the material-man until the house should be completed and occupied.   Nor was there any definite time fixed within which this completion and occupancy were to take place, and the agent having knowledge of the vacancy, it became his duty to notify the insured that the company would elect to cancel or consider the policy void if after a reasonable time the premises should still remain unoccupied.   In *Devine v. Home Ins. Co.*, supra, this question is passed upon in the following language, which we think is in line with the authorities upon questions of insurance in this state :

"There was no testimony tending to show any other fixed or definite time within which the plaintiff was to enter.   If there was no time for that purpose definitely fixed or agreed upon, then it would have become the duty of the agent to have ascertained the fact, and notified the plaintiff that the company elected to cancel or consider the policy void because the premises remained unoccupied.   Until such notice was given, and the premium refunded, the contract would have remained obligatory upon the company."

Again, we are of the opinion that the court did not

err in permitting the defendant in error to introduce in evidence the proofs of loss made by him.   Under the circumstances of this case, we are of the opinion that defendant in error was the only proper person to make such proofs of loss.   He secured the insurance, and for the benefit of the firm of which he was a member, and was to all intents and purposes the insured in the transaction.   So far as the transfer of the rights of S. A. Brown & Co. to the defendant in error is concerned, that question has been settled by our supreme court in the case of *Brown v. School District*, 48 Kan. 709, where it is distinctly held not only that a lien for material is assignable, and that the assignee may maintain an action to enforce the same in his own name, but also that where, as in this case, one member of the firm which has obtained a mechanic's lien under the statute purchases the interest of the other members of the firm he obtains all the rights by succession which the firm had under said lien.

The case last cited also practically disposed of the objections made by plaintiff in error to the introduction of evidence and the instructions of the court so far as the claim of Wine & Tibbs was concerned.   It being established that a mechanic's lien is assignable, when Wine & Tibbs assigned their account to the defendant in error such assignment carried with it by force of law the security, and enabled the defendant in error to recover upon the same to the amount of the indebtedness due him from Wine & Tibbs.

It follows from the views above expressed that the district court did not commit error, either in the admission of testimony or in its instructions to the jury, and the judgment in this case is therefore affirmed.

All the Judges concurring.