**TRANSCONTINENTAL INS. CO. OF NEW YORK v. FRAZIER et al.**

No. 1349.

Court of Civil Appeals of Texas. Waco.

April 13, 1933.

Rehearing Denied May 11, 1933.

Thompson, Knight, Baker & Harris, and Hubert W. Smith, all of Dallas, and Lewis M. Seay, of Groesbeck, for appellant.

Mr. and Mrs. C. S. Bradley, J. E. & B. L. Bradley, and L. W. Shepperd, all of Groesbeck, and W. M. White, of Mexia, for appellees.

ALEXANDER, Justice.

W. H. Frazier brought this suit against Transcontinental Insurance Company to recover on a fire insurance policy in the sum of $2,000 issued by the insurance company on a dwelling owned by Frazier. J. F. Maddox was the mortgagee and the policy was payable to him as his interest appeared. He intervened in the suit. The insurance company, in addition to entering a general denial, alleged that the policy had been canceled prior to the fire and that the property had become and remained unoccupied for a period of more than thirty days prior to the fire and that by reason thereof the policy was voided. A trial before a jury on special issues resulted in a verdict in favor of the plaintiff and intervener, and judgment was accordingly entered in favor of the plaintiff Frazier in the sum of $110.31 and in favor of the intervener, Maddox, for the sum of $1,900.59. The insurance company appealed.

The court did not submit to the jury any affirmative ground of recovery, but submitted defensive issues only. The appellees sought to recover for a total loss and the court allowed such recovery without submitting to the jury any issue as to the extent of the loss. The appellant contends that the court was not authorized to enter judgment for appellees without a finding on this issue. The appellant's general denial put appellees on proof of their allegation that the building was a total loss within the meaning of Revised Statutes, article 4929. National Union Fire Ins. Co. v. Richards (Tex. Civ. App.) 290 S. W. 912, par. 1. Since it was essential for the appellees to establish this issue as a necessary ground of recovery, the court had no authority to withdraw same from the jury and to make findings thereon favorable to appellees unless the issue was conclusively established. Ormsby v. Ratcliffe, 117 Tex. 242, 1 S.W.(2d) 1084; Dallas Hotel Co. v. Davison (Tex. Com. App.) 23 S.W.(2d) 708; International-Great N. R. Co. v. Casey (Tex. Com. App.) 46 S.W.(2d) 669; Bulin v. Smith (Tex. Com. App.) 1 S.W.(2d) 591; Federal Surety Co. v. Smith (Tex. Com. App.) 41 S. W.(2d) 210, at page 213, par. 11. An issue is not conclusively established unless the evidence is such that reasonable minds cannot differ as to the effect thereof. Daugherty v. Wiles (Tex. Com. App.) 207 S. W. 900, par. 1. The only witnesses who testified as to the extent of the loss were the plaintiff, Frazier, and the intervener, Maddox. Since these witnesses were parties to the suit, they were interested witnesses. The general rule, as established by the Supreme Court, is that where the witness is interested, his credibility and the weight to be given to his testimony is for the jury, and the court cannot withdraw from the jury the consideration of an issue established by his evidence alone. 17 Tex. Jur. 926; Thraves v. Hooser (Tex. Com. App.) 44 S.W.(2d) 916, par. 4; Goodrich v. Pandem Oil Corp. (Tex. Com. App.) 48 S.W. (2d) 606; Pope v. Beauchamp, 110 Tex. 271, 219 S. W. 447, par. 5; Houston E. & W. T. Ry. Co. v. Runnels, 92 Tex. 307, 47 S. W. 971; Sigmond Rothchild Co. v. Moore (Tex. Com. App.) 37 S.W.(2d) 121; Stone v. City of Wylie (Tex. Com. App.) 34 S.W.(2d) 842, par. 6; Farm & Home Savings & Loan Ass'n v. Muhl (Tex. Civ. App.) 37 S.W.(2d) 316 (writ refused); Mitchell v. Federal Mortgage Company (Tex. Civ. App.) 45 S.W.(2d) 649; Dunlap v. Wright (Tex. Civ. App.) 280 S. W. 276, 279, and cases there cited.

Furthermore, these witnesses did not testify that the building was wholly destroyed. Frazier testified that in his opinion the loss was total, but this was a conclusion of law. National Union Fire Ins. Co. v. Rich-

ards (Tex: Civ. App.) 290 S. W. 912, par. 10. Maddox testified that the front porch was still standing and that the only examination that he had made of the floors and sills was by looking through the windows. From this it is apparent that the walls were still standing. Since the building was not wholly destroyed, the real issue to be determined was whether the remnant of the building still standing. was reasonably adapted for use as a basis from which to restore the building to the condition in which it was before the fire and that depended on whether a reasonably prudent person would use such remnant as a basis for restoring the building. Royal Ins. Co. v. McIntyre, 90 Tex. 170, 182, 37 S. W. 1068, 35 L. R. A. 672, 59 Am. St. Rep. 797. Maddox did testify that the building looked to him like it was burned too badly to be used, but this was the mere opinion of the witness. The weight to be given to opinion evidence is for the jury. Roberts v. County of Robertson (Tex. Civ. App.) 48 S.W.(2d) 737, par. 7, and cases there cited. We are of the opinion that the court was without authority to enter a judgment on the verdict of the jury without a finding on the issue as to the extent of the loss.

The appellant complains of the refusal of the court to submit to the jury the issue as to whether the policy was canceled. The issue of cancellation arose in this way, the policy as issued was to run for one year from May 11, 1931. The policy provided that it could be canceled by the insurance company as to the mortgagee by giving him ten days' written notice and as to the owner by giving him five days' written notice. It further provided that if the policy should be canceled, the unearned portion of the premium should be returned. The building was damaged by three different fires. The first one occurred in May, 1931, and resulted in a loss of $25 which was adjusted and paid. The second one occurred on July 30, 1931. The parties agreed that this loss amounted to $710.54. On or about September 5, 1931, the company issued and delivered to Frazier a draft in the sum of $710.54 payable to Frazier, his wife, and Maddox, the mortgagee. This draft recited that it was accepted "in full satisfaction of all claims and demands for loss or damage incurred on or about July 30, 1931 under policy 14602 issued at Mexia, Texas, and the policy is hereby cancelled and surrendered." Frazier testified that the above quoted provision of the draft with reference to cancellation was inserted therein without his consent and that he refused to cash the draft for this reason. He further testified that at the time the draft was delivered to him, the company's agent informed him that the policy was still in force. He kept the draft in his possession until after the last fire which occurred on October 5, 1931. The insurance company introduced evidence tending to prove that the reason Frazier did not cash

the draft was because he was negotiating with Maddox for a settlement of the amount due Maddox. At the time the draft was delivered to Frazier he was due an unearned premium of $5.15, in the event the policy was canceled. The company did not return the unearned premium, but the company's agent testified that at the time the draft was delivered, he informed Frazier that he was entitled to an unearned premium and Frazier stated that he would have to "have some more insurance and to give him credit for this $5.-15." The agent gave him credit for the unearned premium, but no more insurance was taken out. The insurance company sought, in various ways, to have submitted to the jury the issue as to whether Frazier accepted the draft containing the cancellation provision in settlement of the loss caused by the second fire and whether the policy was canceled by mutual consent. The court refused to submit these issues.

If Frazier accepted the draft containing the notice of cancellation of the policy in full settlement of his claim for the loss caused by the second fire, such notice of cancellation became effective at once and the policy became canceled five days thereafter even though Frazier never indorsed nor cashed the draft; for even though it be conceded that the parties did not contemplate the cancellation of the policy unless and until the loss was settled, the indorsement of the draft by Frazier or the cashing thereof by him was not indispensable to an acceptance of the settlement. It has been held that where a written contract is signed by one party and accepted by the other, it becomes binding on both parties even though the latter never signed the written instrument. Clegg v. Brannan, 111 Tex. 367, 234 S. W. 1076, par. 2; McClure v. Fall (Tex. Civ. App.) 42 S.W.(2d) 821, par. 13, and cases there cited. Whether or not a return of the unearned premium was necessary before the notice of cancellation became effective, seems to be a mooted question in this state. Austin Fire Ins. Co. v. Polemanakos (Tex. Com. App.) 207 S. W. 922, 924. But certainly if the insured elected to treat the policy as canceled and to accept credit on the agent's books for the unearned premiums, this was equivalent to a return of such premium and the cancellation of the policy became effective by mutual consent of the parties. While the evidence was not sufficient to raise the issue of cancellation as to the mortgagee, it was sufficient as to the plaintiff, Frazier. Upon another trial, if the evidence is substantially the same, the court, in some appropriate way, should submit to the jury the issue as to whether Frazier accepted the draft containing the cancellation notice in full settlement of his claim, and also whether the policy was canceled by mutual consent of the parties.

As a result of the fire on July 30th the electric light wires were disconnected from the building and some of the rooms thereof rendered unfit for occupancy. A part of the building, however, was in condition to be occupied as a dwelling, with the exception that there were no lights available. After the July fire, Frazier and wife rented rooms at a neighbor's house across the street and slept in them from July 30th to the date of the last fire. The evidence does not make it clear where the family meals were served. There was evidence that Mrs. Frazier returned to the insured property each day, opened the building and did her chores in and around the house. She washed the family clothes on the premises, dressed chickens, and prepared other food for the family and entertained her company in the insured building. Mr. Frazier worked at a cleaning plant on the same lot and visited the property regularly. The policy insured the property "while occupied by the owner and not otherwise, as a dwelling," and further provided that if the building became unoccupied for a period of thirty days, the policy should be void. By special issue No. 1 the court submitted to the jury the issue as to whether or not the dwelling covered by the policy was allowed to become and remain unoccupied for a period exceeding thirty days prior to the fire, to which the jury answered, "No." In connection with said issue, the court instructed the jury as follows: "In connection with special issue No. 1, above, and as a part of the law of this case, you are instructed that 'occupancy' of the premises, as provided for in the policy, means such possession, use and occupancy as a place of abode as the insurance company and the insured had in mind and contemplated at the time of the issuance of the policy; that the insured premises were and would be susceptible of by its nature and condition during the period of said policy."

The company's first contention is that the evidence showed, as a matter of law, that the building was unoccupied for a period of more than thirty days prior to the fire, and, second, that there was error in the manner in which the court submitted to the jury the issue of nonoccupancy. The contention that the evidence showed, as a matter of law, that the building was unoccupied is based upon the fact that no one slept in the building. A dwelling is occupied when it is in actual use by human beings, who are living in it as a place of habitation, and it is "unoccupied" when it has ceased to be a customary place of habitation or abode. 3d Cooley's Briefs on Insurance, p. 2571, et seq.; 26 C. J. p. 213, § 259; 14 R. C. L. p. 1103, § 282; East Texas Fire Insurance Co. v. Kempner, 87 Tex. 229, 236, et seq., 27 S. W. 122, 47 Am. St. Rep. 99; Fidelity Union Fire Ins. Co. v. Pruitt (Tex. Com. App.) 23 S.W.(2d) 681, 683, par. 6; Liverpool & London Globe Ins. Co. v. Baker (Tex. Civ. App.) 198 S. W. 632, 634; National Union Fire Ins. Co. v. Richards (Tex. Civ. App.) 278 S. W. 488, 489, par. 1; Hudson Ins. Co. v. McKnight (Tex. Civ. App.) 58 S.W.(2d) 1088. This principle does not imply that in order for a dwelling to be occupied, it must be put to all the uses to which a dwelling is usually put. The only essential is that it is the usual place of abode. 3d Cooley's Briefs on Insurance, p. 2571. We do not understand that it is absolutely necessary that one sleep in a dwelling in order to prevent its being unoccupied as such. 26 C. J. 215, § 260; Rockford Ins. Co. v. Storig, 137 Ill. 646, 24 N. E. 674; Dwelling-House Ins. Co. v. Osborn, 1 Kan. App. 197, 40 P. 1099. We think the evidence was sufficient to raise an issue for the jury as to whether the dwelling was occupied as such.

We believe, however, that the instruction submitted by the court in connection with special issue No. 1 is objectionable in that it shifted to the jury the responsibility of interpreting the written contract between the parties as to what was meant by "occupancy," and, further, because it was calculated to lead the jury to believe that the building was not to be classed as unoccupied so long as it was used in such manner as it was susceptible of being used in the condition in which it was after the fire, even though the jury should find that it was not occupied as a dwelling. Since the contract was in writing and there was no contention that its terms were ambiguous, the interpretation of the contract was for the court. The term "unoccupied" as used in the policy has a well-established legal meaning, and it was the duty of the court to inform the jury as to the meaning thereof instead of leaving it to the jury to ascertain the intent of the parties. Words and Phrases, Second Series, Vol. 4, page 1090; Cooley's Briefs on Insurance (2d Ed.) p. 2566. The contract contemplated that the building should be occupied as a dwelling, and whether or not it was in fact occupied as a dwelling or place of abode, was for the jury. The objection to this charge can easily be eliminated upon another trial.

The judgment of the trial court is reversed, and the cause remanded for a new trial.